## THE TURNPIKE COMPANY *against* BROWN.

2 PW 462
Case 2
30 SC 540

The *Huntingdon, Indiana and Cambria Turnpike Company* cannot recover toll for travelling on their road, from individuals, by action; their only remedy is to demand and receive it at their toll-gates, erected for the purpose.

WRIT of error to *Huntingdon* county.

In this action, *the President, Managers and Company of the*

(The Turnpike Company *v.* Brown.)

*Huntingdon, Cambria and Indiana Turnpike Road* were plain-
tiffs, and *Asa Brown* and *Enoch Jones,* trading under the firm of
*Brown* and *Jones,* were defendants.

The following are the facts of the case:   By an act of assembly
of the 20th of March, 1810, the plaintiffs were incorporated and
invested with all the power and authority usually incident to such
a corporation; such as the right to erect gates, take toll, &c.   The
road was made by the company, and toll-gates erected upon it.

*Brown* and *Jones,* who were contractors on the *Pennsylvania*
Canal, in furnishing materials for their works, used three miles of
the Turnpike road, which was situate between two toll-gates.   After
they had thus used the road, the treasurer of the company demand-
ed from them a reasonable compensation therefor, which they refu-
sed to pay, and for which this suit was instituted.

The court below *(Burnside* president,) was of opinion that the
plaintiffs were *not* entitled to recover; and therefore rendered a
judgment for the defendants.

*Bell* for plaintiff in error.

The demand before suit brought, was all that was necessary to
entitle the plaintiffs to recover.    The act provides that the compa-
ny *may* erect toll-gates; and this is a matter of convenience; but
it is not compulsory upon them so to do; it is not essential to their
right to recover for the use and occupation of their road.

*Miles* for defendant in error,

Insisted upon the inconvenience that would result from the exis-
tence of a right in the company to sue every one who would travel
upon the road, however short the distance.    Whenever the rights
of individuals or the public are restrained or affected by law, that
law must be construed strictly; there being, therefore, no right of
action given by the act of incorporation, it does not exist.   *Cowp.
Rep.,* 26. *Alney* v. *Harris,* 5 *Johns. Rep.,* 175. *Head et al* v.
*Providence Insu. Co.,* 2 *Cranch,* 127.

The opinion of the court was delivered by

GIBSON, C. J.—This is the first instance of an attempt to enforce
the payment of tolls by other means than that prescribed in the
act of incorporation.   The provisions of the act for making a road
from *Harrisburg* to *Pittsburg,* by the southern route, which have
been adopted to designate the rights and the duties of the parties
in regard to the subject-matter before us, authorize the President
and Members "to erect and fix such, and so many gates or turn-
pikes upon and across the said road, as will be sufficient to collect
the tolls and duties;" and to appoint as many toll-gatherers as they

59

(The Turnpike Company *v.* Brown.)

may think proper, to collect and receive the tolls, with power to "stop any person riding, &c., from passing through the said gates or turnpikes until they shall have respectively paid the same." In addition, a penalty is imposed on any one who shall pass through any private gate or bar *near* to or *adjoining* any public gate, with intent to elude the tolls; but this is evidently inapplicable to one who turns aside, without a fraudulent purpose, in the direct course of his journey. Now it is a rule founded in reason and convenience, that every duty created by a statute, be enforced specifically by means, where there are any, provided in the statute itself; and the propriety of it in a case like the present is obvious. The annoyance to those who use the road, especially the inhabitants of a town, would be insupportable, were they exposed at every step to the process of a justice of the peace. A reasonable immunity, therefore, is always allowed to the latter, the extent of which, I believe, is sometimes fixed by law, in erecting the gates at a convenient distance from the place. To prevent imposition and oppression, it is necessary that there should be no other tolls than those that are demandable at places notoriously appointed to receive them, where the traveller may discharge them without detention or the costs of a law suit; and that the object of the legislature was to enable him to do so here, seems to be deducible from other provisions in the same act. Printed rates are ordered to be affixed to the gates, where alone, it is to be presumed, an inspection of them was supposed to be serviceable; and when the road shall be found by an inquest to be out of repair, it is provided that "the tolls granted to be collected, *at such turnpikes or gates,* shall cease to be demanded;" which would be altogether insufficient for the purpose, if tolls were demandable elsewhere. Our turnpike roads are public highways, and it is the franchise of the citizen to use them, free of every restriction that is not explicitly imposed by the legislature; so that a *quantum meruit,* how consistent soever it may seem with justice, is excluded, for reasons of convenience and policy, by the rule I have mentioned.

Judgment affirmed.