FOWLER and others, commissioners of highways of the town
of North Hempstead, *vs.* MOTT.

An action to recover treble damages, by way of forfeiture, for a willful obstruc-
tion to a highway in the county of Queens, is properly brought by the *com-
missioners of highways*, under the 103d and 104th sections of the act to
regulate highways in the counties of Suffolk, Queens and Kings, passed Feb-
ruary 22, 1830.

Such action should not be brought by the overseer of the district, under the 83d
section of the act.

To authorize an action of that nature, it is not necessary that the obstruction
should have been upon a *recorded highway*. It is sufficient that a road has
been used as a public highway for twenty years or more prior to the 21st day
of March, 1797, and has been used and worked as such for the last six years.

And although it be not satisfactorily proved that an ancient road has been worked
within the last six years, yet if it has been in constant use during that time,
that is all that is necessary, to continue its previously acquired public char-
acter.

Where a certificate of commissioners of highways states that they have laid out,
and do lay out, a highway, this will be held to import that the road was laid
out at the date of the certificate, within the meaning of the act, although it is
also stated that the highway is upon a line " according to public usage for
twenty years previous to 1797 ;" there being nothing in the act to prevent the
laying out of a road upon the site of an old one.

It need not appear affirmatively from such certificate, that the owner of land has
assented that the road shall be laid out through it, or that he has received any
compensation for his property thus taken for the use of the public.

Nor is it necessary that the owner's consent, if given, should be in writing. It
may be verbal, and may be proved by oral testimony.

Where a certificate of commissioners of highways designates the land laid out, as
and for a public highway *and landing*, without in terms appropriating it as a
place of deposit, it will be construed as specifying a purpose, so far as relates
to the landing, to which, with others, it may be lawfully directed. The terms
will be applied to the legitimate province of a highway, and no further.

If the privilege of a public landing, in any sense of the term, cannot be legally con-
ferred, under the statute, the act of the commissioners can be sustained to the
extent of the laying out the land as a *public highway*. The addition of a *pub-
lic landing* is simply void, and will not be fatal to the entire proceeding; on
the maxim that *utile per inutile non vitiatur*.

Where a highway extends to the edge of the water there is not any exclusive right
of landing, *per se*, in the riparian owner, and there is a right of passing over
his land, to its entire extent, in the public.

Although highways are not designed to be, and cannot be appropriately used as,
places of deposit, except for temporary and necessary purposes, nor appro-

Fowler v. Mott.

priately incumbered by vessels or boats, yet *it seems* that they are free for the passage of all, whether from the land or the sea.
The privilege may be restricted, however, when it would interfere with the franchise of a ferry or a wharf.

APPEAL from the Queens county court. The action was commenced by the respondents against the appellant, before a justice of the peace of the county of Queens, to recover damages for the obstruction of a public highway, in the town of North Hempstead, in said county. The defendant, in his answer before said justice, denied, among other things, that the premises described in the complaint, either were or ever had been a public highway, and tendered the undertaking required by statute in cases where the title to land comes in question. Whereupon, and in pursuance of the statute, the said action before the justice became and was discontinued. An action was then commenced in the county court of Queens county, by the service of a summons and complaint. The complaint set forth that the plaintiffs were commissioners of highways of the town of North Hempstead, and that the defendant, on the 29th day of April, 1852, willfully injured a certain highway in said town, at a place called Bedell's Landing, on the east side of the village of Roslyn, by digging a ditch on the same and carting away the earth therefrom, thus obstructing the public travel and injuring the highway to the amount of $10. Also, that on the 13th day of May, 1852, the defendant again willfully injured said highway, by digging another ditch thereon and carting away the earth therefrom, thus obstructing the public travel and injuring the highway to the amount of $20. The said action was commenced before the justice of the peace above named, and was discontinued for the reason and in the manner and form above set forth. The plaintiffs claimed to recover of the defendant the sum of ninety dollars damages and costs. The answer of the defendant, 1st, denied that he was guilty of any or either of the acts charged in the complaint; 2d, averred that the premises alleged in the complaint to be a highway, and upon which the said injuries were alleged to have been committed, were not at the time and never had been a public highway, but the premises,

soil and freehold of the defendant; 3d, denied that he injured the premises, as alleged in the complaint, and denied each of the averments in the complaint in that respect contained; and 4th, denied any indebtedness to the plaintiffs. The reply of the plaintiffs denied that the *locus in quo* was the soil and freehold of the defendant, but averred that the same is and was the soil and freehold of the town of North Hempstead, belonging to the freeholders and inhabitants thereof, and had been long since dedicated and appropriated by such freeholders and inhabitants for a public highway, and that the same had been ascertained and approved and entered of record as a highway of said town, and had been used as such constantly and uninterruptedly by the public for twenty years and upwards, prior to the year 1797, to the time of the commission of said injuries. The action was brought to trial at a special term of the Queens county court, held on the 9th day of June, 1853, before the county judge and a jury.

On the trial, the town clerk of the town of North Hempstead was sworn as a witness, and produced the town books and records, and read therefrom the following order of the commissioners of highways, dated November 7, 1818.

"We, the subscribers, commissioners of highways for the town of North Hempstead, in the county of Queens, have and do lay out a highway at a place called Bedell's Landing, on the east side of Hempstead harbor; beginning at the highway, thirty-eight feet northwesterly of a black walnut tree, standing a few rods northwesterly of a school house, starting at a stake put in the ground, and running westerly to a stake in the bend of the fence, and so on westerly six feet north of a pear tree in the possession of the Rev. David S. Bogart, and from thence to an apple tree standing in the fence. And from thence to a large willow tree, three rods wide from the place of beginning on the north side of the above described line, according to public usage of said road, twenty years previous to the year one thousand seven hundred and ninety-seven. And running said line from said willow tree westerly to another willow tree, and thence west to the main creek, including all the ground north of said line,

Fowler *v*. Mott.

to a brook or small stream of water running out of Daniel Robbins' meadow, it being for a public highway *and landing*. All of which was done agreeable to a request made to us in writing, signed by twenty-six freeholders of said town.

Given under our hands this seventh day of November, in the year eighteen hundred and eighteen." (Signed by S. Mitchell and others, commissioners.)

The defendant's counsel objected to the reading of this record, for the following, among other reasons : 1st. That the said record did not lay out the whole of the premises as a highway, "according to public usage, previous to the year 1797," but the first portion only, ending with the words "1797." 2d. That the record did not "lay out" the last part of the premises described therein, commencing with the words "and running said line," &c., either as *new road*, or as one having been used twenty years preceding 1797. The intention and act of the commissioners to "lay out" a highway, ended with the words "1797," and the words "lay out a highway," at the commencement of the record, did not include nor refer to that portion of the premises lying west and north of the first willow tree, and which said portion was not *laid out* for any purpose whatever. 3d. This last mentioned part of the premises, commencing with the words "and running said line," &c., is described as "being for a public highway and landing." That the commissioners had no power or authority to lay out a public highway and landing, nor a landing alone. Consequently their act assuming so to do, and the record, is void. 4th. That the record was not a record of a *new road*, for no jurisdiction to lay it out as such was shown on the face of the record. The consent of the owners of the land over which it was laid out, or the value, with the damages paid therefor, should appear on its face. 5th. That the record was not evidence of a highway used twenty years preceding 1797, inasmuch as it did not follow the words of the statute, setting forth that it "has been used as a public highway for twenty years or more next preceding the 21st day of March, 1797." 6th. That the 22d section of the act of 1813 does not give power to the commissioners to make a record, as such, but merely

authorizes them " to order the overseers of highways to open all such roads, &c. *which they shall judge to have been used as public highways for twenty years,*" &c.

The plaintiff proved the digging of the ditches by the defendant or persons in his employ, as alleged in the complaint. The defendant claimed the land on which the ditches were dug as his property, under a deed from John Tatterson to James Mott, jun. and others, dated July 30, 1849. It was admitted that the ditches were situated north of the southerly line of the road, also west of the willow trees, where there was a wide space, which, it was proved, had always been used for laying wood, manure and ashes on, and for the general purposes of a landing. And it was proved that space had never been obstructed until recently. The ditches in question blocked the way up, so that people could not cross ; it cut people off from going to the landing, where vessels came in. The road had run down to the place where vessels landed, for the last thirty-two years, and had never been obstructed, until the ditches in question were dug.

It was admitted that the plaintiffs are now, and, at the time of the commencement of this action were, the commissioners of highways of the town of North Hempstead. The plaintiffs then rested their cause. The defendant's counsel then moved the court for a nonsuit, on the following grounds : 1st. That there was no proof that the *locus in quo* was laid out as a highway. That the record produced, if it proved any thing, showed it was laid out as a landing. That if it be considered as laying out both a highway and landing, then it was inoperative ; the commissioners having no power to lay out a landing. 2d. That the road had not been opened and worked within six years after being laid out in 1818, nor within six years before the act of 1830 took effect. 3d. That the commissioners of highways had no right of action for the injury complained of. If any right of action existed at all, it was given to the overseers of highways. 4th. That the commissioners could only sue under section 104, for obstructions to such highways as had been legally laid out and recorded by the commissioners of highways. 5th. That

the commissioners of highways could only sue for obstructions to such highways as were recorded. 6th. That even if the premises in question were dedicated to the public use, for the purpose of a road, yet, that did not give any jurisdiction over the premises to the commissioners of highways, so as to entitle them to sue. 7th. That there was no proof that the premises, described in the record, nor any part thereof, were used as a public highway for twenty years, or more, perceding the 21st day of March, 1797. 8th. That there was no proof of payment for the land taken, nor of the consent of the owner to the laying out of the highway. The court denied the motion, to which the defendant's counsel excepted.

A great amount of testimony was introduced, which it is not necessary to refer to.

The court charged and instructed the jury, that it appeared that in 1818 the commissioners of highways of the town of North Hempstead went on the premises in question, and decided upon and made up a record of their proceedings, establishing this as a highway, as appears by their order dated November 7, 1818, which order was made upon the application of a number of the inhabitants, and as it appears by the testimony of Mrs. Robbins, her husband joined in and signed a written application. The order of the commissioners described it as three rods wide down to the east willow tree ; after that the width was not defined, but it recited that it should include all the land north of a certain line, up to the brook. This was the part on which the injury was alleged to have been committed.

The judge stated that he was requested to charge that the title vested in the defendant. That title must vest somewhere, either in an individual or in the public. The fee of our highways generally is vested in individuals, and yet is subject to the use of the same by the public as highways. That there did not appear to be much doubt but that the conveyance to Mott and others in 1849 included the lands in question, but the jury had a right to inquire whether the grantor, Tatterson, was the owner, at the time of the conveyance, and if so, then another question arose, whether the conveyance would deprive the public

of any rights they might have acquired previously. Of course if the public had rights there, the conveyance would not interfere with those privileges, but would be subject to them. That where the commissioners had laid out and established a highway, he did not consider it necessary that the same should actually be worked and repaired within six years ; the fact of its being opened and used as a highway, was sufficient. That if the jury believed from the testimony that this west part was not a highway, that the then commissioners did not comply with the requirements of the statute in establishing it as such, or that the record, in connection with the other testimony, did not show that the same was now a highway, and had been used as such for six years prior to 1830, then this case must fall, the present commissioners having no right to maintain this action; but if the jury come to the conclusion that the same was a highway according to the eighty-second section of the statute, then the question arose, had the defendant injured the same wantonly, and did such injury come under the one hundred and third section of the statute. If so, the only remaining question was the amount of damages, which was left entirely with the jury ; and if they found that the defendant was liable, their verdict would be only the actual amount of the injury. That if the ditch spoken of was below high water mark, then it was beyond the jurisdiction of the commissioners, and they could not recover for any injury or damage done on that part. The counsel for the defendant excepted to the said charge in the following particulars, viz: To so much thereof as instructed the jury that the record in question established the premises in question as a highway. Also, to so much thereof as instructed the jury that they had a right to inquire whether Tatterson was, at the time of the conveyance by him, the owner of the lands in question. Also, to so much thereof as instructed the jury that they had a right to inquire whether the public had, previous to the said conveyance, acquired any rights to the premises in question. Also, to so much thereof as instructed the jury that it was not necessary that the highway should actually be worked within six years. Also, to so much thereof as instructed the jury that the fact of its being

opened and used as a highway was sufficient. Also, to so much thereof as left it to the jury to determine whether the premises in question were a highway. Also, to so much thereof as left it to the jury to determine whether the then commissioners had or had not complied with the requirements of the statute in establishing it as a highway. Also, to so much thereof as left it to the jury to determine as to the effect of the record. Also, to so much thereof as left it to the jury to determine whether the injury complained of came under the one hundred and third section of the statute referred to.

The cause was then submitted to the jury, who rendered a verdict of twenty dollars for the plaintiffs, which sum, on motion of the plaintiffs' counsel, was trebled by the court, who rendered judgment for the plaintiffs in the sum of sixty dollars. From that judgment the defendant appealed to this court.

*John A. Lott,* for the appellant. I. The record of the order of the commissioners of highways of the town of North Hempstead was inadmissible evidence to prove the *locus in quo* a highway, for the reasons stated by the defendant's counsel on the trial. II. The record, if evidence for any purpose, only proves a highway so far as it purports to be laid out " according to public usage of said road, twenty years previous to the year one thousand seven hundred and ninety-seven." The ground lying between the first willow tree and the main creek, and extending northerly to the brook or small stream, is clearly intended to be laid out " for a public highway and landing." III. The commissioners had no power or authority to lay out a public highway *and landing*, nor a *landing alone.* (2 *R. L. of* 1813, *p.* 304. *The Com'rs of North Hempstead* v. *The Judges of Queens,* 17 *Wend.* 9. *Pearsall* v. *Post,* 20 *Id.* 111. *Post* v. *Pearsall,* 22 *Id.* 425, *S. C. in error.*) IV. The parol evidence did not prove the *locus in quo* to have been used as a highway for twenty years preceding 21st March, 1797, nor at any other time ; on the contrary, the whole scope of it tended to show its use as a public landing. V. The commissioners of highways had no jurisdiction over the premises in question, and conse-

quently had no right to sue for the injuries complained of. If the citizens of North Hempstead generally had acquired a right of passage over the ground, in consequence of its dedication by the owner to public use, or even if it had been used as a public highway for twenty years preceding 21st March, 1797, yet no rights were conferred nor duties imposed on the *commissioners of highways.* It was necessary to give them jurisdiction that it should be recorded as a highway in the town clerk's office. (*The City of Oswego* v. *The Oswego Canal Co.,* 2 *Seld.* 258. *See also The People* v. *Lawson,* 17 *John.* 277.) VI. If the *locus in quo* were ever a highway, it ceased to be a road for any purpose whatever, by not being worked within six years from the time of its being laid out. (*See Act regulating Highways on Long Island, Laws of* 1830, *ch.* 56, *p.* 56, § 81. *Lyon* v. *Munson,* 2 *Cowen,* 426.) VII. The injuries complained of were not willful, within the meaning of the statute. The defendant acted under a conviction of right and a claim of title to the property. VIII. The right of action, if any existed, was given to the overseer of the district, and not to the commissioners of highways. (*Laws of* 1830, *ch.* 56, § 83.) IX. The motion for a nonsuit was improperly denied, for reasons stated in the case. X. There was no evidence to support the verdict. XI. The court below erred in admitting evidence. XII. It also erred in excluding evidence offered by the defendant. XIII. The court below erred in refusing to charge the jury as requested. XIV. The charge of the court in the particulars excepted to was erroneous.

*W. H. Onderdonk,* for the respondents. I. The record of the highway was properly admitted. (1.) A liberal construction of the record, in connection with the testimony of the commissioners, on the subject, shows that the entire road was laid out according to public usage. (2.) The intention and act of the commissioners, in laying out the highway, extended over the whole premises described in the record, and did not end with the words "1797." (3.) By § 1 of the law of 1813, the right to lay out landings is recognized as existing *somewhere.* The power

is granted to no specific officers, and would, therefore, appear properly to belong to the commissioners of highways. Moreover, the law of 1830, § 1, sub. 2, recognizes the validity of landings laid out previous to the passage of that law. (*Highway Act, Queens, &c. passed* 1813, § 1. *Highway Act, Queens, &c. passed* 1830, § 1, *sub.* 2.) If the commissioners had no power to lay out a landing, their act is good so far as it lays out a *highway*, and is only void as to the excess of authority exercised by them. But they did not lay out the landing; they laid out a highway, and then declared it to be *for* a highway *and* landing, which was in fact the legal effect of their act laying out a highway. (*Com'rs of Highways of North Hempstead* v. *Judges of Queens Co.,* 17 *Wend.* 9.) (4.) The consent of the owner of the land, or payment of damages, is not necessary to give the commissioners jurisdiction to lay out a road. (*See Case* v. *Thompson,* 6 *Wend.* 634.) In such case the presumption is, that public officers do their duty. (*Ex parte Clapper,* 3 *Hill,* 458. *Downing* v. *Rugar,* 21 *Wend.* 183. *Weaver* v. *Devendorf,* 3 *Denio,* 119. *Prosser* v. *Secor,* 5 *Barb.* 607. *Harrington* v. *People,* 6 *Id.* 607, 611. *Sage* v. *Barnes,* 9 *John.* 365. 2 *Cow. Treat.* 941.) And it was for the defendant to show a want of consent. Besides, there was evidence that the *locus in quo* was public property, belonging to the town of North Hempstead. But if the *locus in quo* was private property, and the consent of the owner or payment of damages were necessary, this will be presumed, after the lapse of so many years (from 1818 to 1850) and the long acquiescence of the alleged owner in the act of the commissioners, and the use of the road by the public without objection. (*Miller* v. *Garlock,* 8 *Barb.* 153.) But there was sufficient evidence of consent for the jury. Judge Mitchell testified that *all* the inhabitants east of the harbor wanted the road, and that there was a universal verbal consent. (A verbal consent is sufficient.) See also testimony of Elizabeth Robbins. (*Noyes* v. *Chapin,* 6 *Wend.* 461. *People* v. *Goodwin,* 1 *Selden,* 568. 15 *Barb.* 480.) But the defect, if any, is cured by statute, a survey having been recorded between 1805 and 1826, to wit, in 1818.

(1 *R. S.* 520, § 98, *&c.* Parker v. *Van Houten*, 7 *Wend.* 145.) The commissioners were not bound to show the preliminary steps to the laying out of the road; it was enough to produce the record, and show that the road was opened and used as a public highway. (*Law of* 1813, §§ 6, 20. *Act of* 1830, § 82.) *Sage* v. *Barnes*, 9 *John.* 365. 2 *Cow. Treat.* 941. *Tucker* v. *Rankin*, 15 *Barb.* 471.) (5.) The record need not set forth the facts on which the commissioners acted. It is convenient that it should do so, for if it do, the statement in the record is *prima facie* evidence of jurisdictional facts, and conclusive as to all others, and thus throws the *onus* on the other party. (*Van Steenburgh* v. *Bigelow*, 3 *Wend.* 42. *Jenks* v. *Stebbins*, 11 *John.* 226. *Barber* v. *Winslow*, 12 *Wend.* 102. *Hubbell* v. *Ames*, 15 *Id.* 372. *Downing* v. *Rugar*, 21 *Id.* 183. *Starbuck* v. *Murray*, 5 *Id.* 148. *Harrington* v. *People*, 6 *Barb.* 607, 610.) But if it do not set forth the facts, they may be proved *aliunde.* (*Brown* v. *Cady*, 19 *Wend.* 447. *Harrington* v. *People*, 6 *Barb.* 607, 610. *Barnes* v. *Harris*, 4 *Coms.* 385.) The record states the fact that the road had been used twenty years, &c., though not in the precise words of the statute. (6.) The 6th sec. of the act of 1813 authorizes the commissioners to put on record all the highways by them laid out, *approved of*, &c. By the 22d sec. all roads which have been used as public highways for twenty years preceding, &c. shall be taken and deemed as public highways; and the commissioners are to order *such roads as they shall judge to have been used, &c.* to be opened, &c. They must, therefore, "*judge*" the road to have been used for the requisite period before they can act. In other words, they must *approve of the* road, and then § 6 gives them the power to record it. The record of the commissioners is evidence of their approval. The road having been recorded, the record is good and lawful. (*Act of* 1813, § 20.) Moreover, no record was required, and the road having been used as a public highway for twenty years, became *ipso facto* a public highway, and no record was required. (*Act of* 1813, § 22.) But if the statute did not authorize or require them to make a record of the road, then the fact that they had judged the road

Fowler *v.* Mott.

to have been used as a public highway for twenty years, &c. could be shown by parol proof without the record, and there was evidence from which the jury might fairly presume such user.

II. The judge was right in not allowing the declarations of the defendant to be given in evidence for the purpose of showing that the trespass was committed under a claim of ownership to the *locus in quo ;* for even if he had been the owner, this would give him no right to interfere with the use of the premises by the public as a highway. Besides, the evidence was incompetent, as being the mere declaration of a party in his own favor.

III. The road has been worked as a highway. It was seldom worked, because, from the nature of the soil, the overflowing of the tides, and the rain, it seldom needed working. The road was opened and worked and in use as a highway when it was laid out, and continued to be so used from that time to this, and to be worked when needed.

IV. The testimony proved the *locus in quo* to have been a highway, and that really is the only question in the cause. The question, who has the fee in the land over which the highway runs, is wholly immaterial, unless it be also shown that the *locus in quo* was not a highway at the time of the alleged trespass upon it by the defendant.

V. The injuries were done knowingly, deliberately, and therefore willfully. There was no suitable place of ingress and egress left; but the public were deprived of the right of way.

*By the Court,* S. B. STRONG, J. The certificate of the commissioners of highways of the town of North Hempstead, dated on the 7th day of November, 1818, purported that they *laid out* a highway at Bedell's Landing, commencing at a highway near a school house, and running westerly to a willow tree, being three rods in width on the north side of a designated line "according to public usage for twenty years previous to the year 1797," and extending westerly from the willow tree to the main creek, including all the land north of the south marginal line to a brook, "it being for a public highway and landing." The plot taken by the commissioners became wider than three rods after

passing to the westward of the willow tree, and is nine rods wide at the head of the landing. The defendant dug a ditch on that part of the plot lying west of the willow tree, and more than three rods north of the south side of the highway; and this suit was instituted to recover treble damages for such alleged obstruction, under the 103d and 104th sections of the act to regulate highways in the counties of Suffolk, Queens and Kings, passed on the 22d of February, 1830.

The defendant's counsel contended, on the argument, that the action should have been brought by the overseer of the district, under the 83d section of the act. That section imposes a single *penalty* of five dollars for a *wanton* damage to the road, or obstructing or injuring it in various ways, to be recovered by the *overseer* of the district. The 103d section of the act provides that whoever shall *willfully* injure any highway, shall forfeit treble *damages*, but does not state by whom they shall be recovered. The 104th section provides that all penalties or forfeitures given in the act, and not otherwise specially provided for, shall be recovered by the commissioners of highways. This action is for *treble damages*, by way of forfeiture, for a *willful* injury; and there is no special provision in the act for their recovery by any other officer. It could be instituted, and can be sustained, if at all, only by the commissioners. The injuries mentioned in the 83d and the 103d sections must often be identical, but the remedies are different; and if they are not cumulative, so as to support an action under each section for the same wrong, there can be no difficulty in sustaining the suit first instituted, according to the provisions of the statute. The action is for an injury to the *highway*, and unless the ground where the ditch was made was a part of the highway, it cannot be maintained. I do not agree with the counsel for the defendant that the obstruction must necessarily be upon a recorded highway. The 82d section of the act declares that all roads *not recorded*, which have been used as public highways for twenty years or more preceding the 21st day of March, 1797, and which shall have been used and worked as such for the last six years, *shall be deemed public highways*. The act makes it the duty of the

commissioners to record a description of such highways, but they do not forfeit their character of public roads by any omission of the commissioners to comply with the statutory requisition. The proof to sustain the allegation that the road in question was an ancient highway within·the meaning of the statute was by no means strong, but we are not authorized to reverse the judgment of the court below upon a question of fact, so long as there was any evidence to sustain it. Neither was it satisfactorily proved that the road in question had been worked within the last six years. But, clearly, it had been in constant use during that time,· and that was all that was necessary, to continue its previously acquired public character. The statute could not have been designed to obliterate highways *in* constant use when repairs have not been made because they were unnecessary. In cases where a sound construction of a statute requires the substitution of a disjunctive for a copulative conjunction, the change is uniformly and very properly made. Verbiage yields to reason.

This case was argued, however, principally upon the record, and it will no doubt be more satisfactory to the parties, and possibly terminate the controversy between them, to consider and decide the questions which the record·presents.

The certificate of the commissioners purports that they *laid out* the road at the time of its date. It says that they have *and do lay out the* highway. It is also stated that it is upon a line "according to public usage for twenty years previous to 1797." That may be true, and yet the road may have been *laid out* at the date of the certificate, within the meaning of the act, as there is nothing in it to prevent the laying out of a road upon the site of an old one. The statement that it was upon an old track might have had some reference to the amount of compensation to the owner of the soil. Probably the owner would not have been concluded by it ; but if he would, and it was wrong, he might have appealed. It does not appear affirmatively, on the record, that the owner of the land had assented that the road should be laid out through it, or that he had received any compensation for his property thus taken for the use of the public. It is nowhere rendered necessary that those statements should

be made upon the record. Nor is it necessary that the owner's consent, if given, should be in writing. It may be verbal, and may of course be proved by oral testimony. The evidence is strong to show that the proprietor of the land (if it belonged to any private owner) did give the requisite consent. If not, the right to object was personal to him, and if he did not think proper to make any objection, the right did not pass to his subsequent grantee. The statute authorizes the owner (among others) to appeal from the determination of the commissioners, within a limited time. If he suffers that time to elapse without doing any thing, it is too late for him to appeal, although possibly he may resort to other measures to obtain his compensation. It is right, on many accounts, that a dissatisfied owner of land taken for public purposes should raise his objection, if he intends to make any, within a reasonable time after the proceeding has become public and thus been made known to him.

The principal objection to the determination of the commissioners, and that upon which the counsel for the defendant mainly relied on the argument, is that they designated the land laid out as and for a public highway *and landing*. It is very clear that they were not authorized to lay out a public landing, nor do they designate that mentioned in their certificate as a public landing previously laid out. What is said of ancient public usage, is connected directly with, and has reference in terms to, that part of the road east of the willow tree. In records affecting private rights, the language should receive a strict construction ; at any rate, it should not be stretched so as to include doubtful and remote inferences.

The statute fixes no maximum limit to the width of a highway. That is left to the discretion of the commissioners. Should the discretion be abused, their proceeding, when they have the requisite jurisdiction, can be corrected by appeal to the county judge, and, as I conceive, only on such appeal. The appropriate width of a highway must of course depend much upon its location, and the business to which it will be principally appropriated. A greater width is desirable when it passes through a populous village, or by a church or court house, than when it

runs through woodland. So, too, when it terminates at a public landing. I mean for the passage of carriages. Some of our judges seem to think that there can be no public right of deposit, beyond the immediate necessity which justifies a temporary and brief obstruction of the highway. Possibly they may be right, although our early legislators evidently thought very differently. They have not, however, yet decided that our highways cannot be widened when the public convenience requires it, although it may be at a public landing. In the case of *The Commissioners of North Hempstead* v. *The Judges of Queens County*, (17 *Wend.* 12,) Chief Justice Nelson, in giving the opinion of the court, says, " the road itself, when laid out to those places, (public landings,) *as it may be, under the statute, becomes the public landing or entering place at its termination. The width of it at such places may be regulated to suit the public convenience*, according to the discretion of the commissioners of highways, as they are unrestricted in this respect." I do not understand the judgment in *Pearsall* v. *Post*, (20 *Wend.* 111, and 22 *Id.* 425,) as overruling the doctrine laid down by Judge Nelson in the case which I have quoted from the 17th Wendell. On the contrary, Judge Cowen, in one part of his elaborate opinion in the case of *Pearsall* v. *Post*, (20 *Wend.* 131,) says, that " as remarked by Chief Justice Nelson in the case cited, the only way in which they (the commissioners of highways) could act favorably to a landing, would be indirectly, by exerting their statute powers for *establishing*, and preventing encroachments on, a highway leading to and connecting with it." But it is difficult to see what benefit would result from the procedure, if the learned judge was correct in subsequently saying that the right of the public does not extend to landing goods or passengers from the navigable waters upon an adjoining public highway. That point was not necessarily involved in the case which he was considering ; nor was it decided, either in this court or in the court for the correction of errors ; nor, with the greatest respect for the memory of that learned judge, do I believe the position taken by him to be sound. All our navigable waters are unquestionably public

highways, free for the passage of all, to their entire extent. Our public highways are equally free to all, to the water's edge, if they extend so far, as it is admitted by all they may. The question is (if indeed it can be a question) whether it is not a public common right to pass from one highway to another, when they adjoin each other. If the question is of highways upon the land, there can be no doubt; and what difference in principle can there be if one is upon the land and the other upon the water? If there is a line between the two, which is the property of the riparian proprietor divested of the public right, it is too narrow to be perceptible. In the case of *Gould* v. *The Hudson River Rail Road Company,* (2 *Selden,* 522,) the court of appeals decided that the right to pass from the navigable waters to the adjoining land is public and does not belong exclusively to the riparian owner, so that he can obtain a compensation for it when affected or destroyed by a public improvement. Judge Watson, in giving the opinion of the court, says, that "among the rights enumerated by the plaintiff's counsel are the exclusive right to embark from his own land with all kinds of craft, or to use the natural shore down to high water mark, as a landing place, and to draw nets to his shore. *These exclusive rights do not belong to the plaintiff because his lands adjoin navigable waters,* but because no other man can enjoy them, for the reason that if he enters upon the appellant's land, without his permission, he becomes a trespasser." That is, the riparian owner has no other rights than such as belong to other land proprietors, to enjoy his property free from the invasions of those who have no right to intrude upon it. But if a highway extends to the edge of the water, what wrong is effected by exercising the public privilege of passing over it? There is not, according to the case which I have cited from Selden, any exclusive right of landing, *per se,* in the riparian owner, and there is a right of passing over his land, to its entire extent, in the public. I am free to admit that highways upon the land  are not designed to be, nor can they be appropriately used as, places of deposit, except for temporary and necessary purposes; nor can they be appropriately incumbered by vessels or boats,

Fowler *v.* Mott.

but it seems to me that they are free for the passage of all, whether from the land or the sea. The law makes no distinction, nor should it. The privilege may be restricted when it would interfere with the franchise of a ferry or a wharf. But in such cases the right of way, and the franchise, both emanate from the public, and one may well qualify the other.

It seems to me, therefore, that the record in this case, in designating the plot over which the highway was laid out as a public landing, merely specified a purpose to which (with others) it might be lawfully directed. It does not in terms appropriate it as a place of deposit. If it had done that, it might have gone too far. The terms must be applied to the legitimate province of a highway, and no further.

If, however, the privilege of a public landing, in any sense of the term, cannot be legitimately conferred under the statute, the act of the commissioners can be sustained so far as they laid out the land as a public highway. The addition of a public landing would be simply void, and would not be fatal to the entire proceeding ; on the maxim that *utile per inutile non vitiatur*.

Some of the evidence adduced in the court below was inadmissible, but as, in the view which I have taken, such evidence had no reference to the questions which control this case, the judgment should not be reversed on that account.

The judgment should be affirmed.

[KINGS GENERAL TERM, January 2, 1855. *S. B. Strong, Rockwell* and *Dean,* Justices.]