## The Geneva.

*(District Court, W. D. Pennsylvania.   May Term, 1883.)*

1. WHARFAGE—MUNICIPAL CORPORATION—LEGISLATIVE GRANT:
    A municipal corporation claiming the right to exact wharfage for the use of a public wharf must show a plain legislative grant of the franchise; and such authority cannot be deduced from the powers to lay out, regulate, and exercise all needful jurisdiction over roads, streets, lanes, and alleys, and to make laws, ordinances, by-laws, and regulations for the good order and government of the municipality not repugnant to, or inconsistent with, the laws of the commonwealth.

2. SAME—CLAIM DENIED.
    The borough of Elizabeth has no such riparian proprietorship in the wharf at the foot of Market street as will sustain its claim to wharfage.

In Admiralty.

*J. M. Nevin,* for libelant.

*D. T. Watson,* for respondents.

ACHESON, J.   The borough of Elizabeth claims the right to charge wharfage—*First,* under legislative authority; and, *secondly,* by virtue of riparian proprietorship. Let us briefly examine the grounds of the claim in the order stated.

1. It is not pretended that the borough charter confers any express authority to construct a wharf and exact tolls or wharfage for its

use. Implied authority is all that is asserted, and this must be derived either from the powers granted in respect to highways or the general power to enact laws for the government of the borough. The original act of incorporation authorized the town council to appoint officers for "regulating the streets, lanes, and alleys," and by the act of 1851 the borough authorities are empowered "to survey, lay out, enact and ordain such roads, streets, lanes, alleys, courts, and common sewers as they may deem necessary; and to regulate the roads, streets, lanes, alleys, courts, common sewers, public squares, common grounds, footwalks, pavements, gutters, culverts, and drains, and the heights, grades, widths, slopes, and forms thereof; and they shall have all other needful jurisdiction over the same."

Under a substantially similar grant of power the supreme court of Indiana, in *Snyder* v. *Rockport*, 6 Ind. 237, held that the municipality was not authorized to construct a wharf. But if it be conceded that the borough of Elizabeth might lawfully construct a wharf at the river terminus of a street, it by no means follows that the borough can charge wharfage for its use, any more than it can exact tolls for the use of any other public highway.

In respect to municipal affairs generally, the council is empowered to make "laws, ordinances, by-laws, and regulations" for the good order and government of the borough, subject to the express restriction that they shall not be repugnant to or inconsistent with the laws of the commonwealth.

The question first to be decided is whether, from the express powers above recited, the borough of Elizabeth can rightfully deduce a legislative grant of the franchise to charge wharfage. In his work on Municipal Corporations, § 67, (2d Ed.,) Mr. DILLON classes the authority to erect wharves and charge wharfage among "the powers of a special and extra-municipal nature." In this view he is fully sustained by the adjudged cases. *The Wharf Case*, 3 Bland, Ch. 361; *People* v. *Broadway Wharf Co.* 31 Cal. 33. It was declared in the *Wharf Case, supra*, 384, that, except by express legislative allowance, the "public wharves [of Baltimore] are no more liable to wharfage than any one of the streets of the city are subject to toll." In the case of *The Empire State*, 1 Newb. Adm. 541, it was held that while the authorities of the city of Detroit might erect wharves at the *termini* of their streets, suitable for landings, such erections became free to the public as extensions of the streets, and the city had no authority to exact toll for ingress or egress. In *St. Martinsville* v. *The Mary Lewis*, 32 La. Ann. 1293–95, the court decide

against the right of the municipality to erect wharves and charge wharfage, and say: "The power to exact tolls is a restraint upon the freedom of navigation, and is liable to· abuse; and the corporation seeking to enforce such exaction must present a clear legislative authority for the purpose.

This precise question, so far as I know, has never been considered by the supreme court of Pennsylvania; but in *Huntington, etc., Turnpike Co.* v. *Brown,* 2 Pen. & W. 462, 464, that court, treating of the subject of tolls collectible by a turnpike company, after declaring turnpike roads to be public highways, say: "And it is the franchise of the citizen to use them free of every restriction that is not explicitly imposed by the legislature."

In *Perrine* v. *Chesapeake & D. Canal Co.* 9 How. 172, the supreme court of the United States applied the same doctrine to a canal built by an incorporated company. The principle is undoubtedly applicable to a public wharf, for when a highway upon the land connects with a public river, to pass from the one highway to the other is a public common right. *Fowler* v. *Mott,* 19 Barb. 204. That it is competent for the legislature of a state to authorize a municipal corporation to demand tolls from those engaged in commerce for the use of a public wharf is settled; but the privilege being in derogation of common right, the municipality claiming it must show a plain legislative grant of the franchise. I am of opinion that the borough of Elizabeth has not been invested by the legislature with such authority.

2. But where a municipal corporation is a riparian proprietor, its right to charge wharfage has been judicially recognized. *Murphy* v. *City of Montgomery,* 11 Ala. 586–589; Dillon, Mun. Corp. § 72; *Cannon* v. *New Orleans,* 20 Wall. 577. The second inquiry, therefore, is whether upon this ground the claim of the borough can be sustained.

The wharf at Elizabeth was constructed by the borough in 1847 or 1848, and the cost defrayed, in part, out of borough funds, and in part by private subscriptions. It is located at the foot or mouth of Market street, which street, the evidence shows, extends to the Monongahela river. Mr. Diehl, who was a member of the town council when the wharf was built, and chairman of the construction committee, testifies that Market street at this place is 60 feet in width. He also states that at the river bluff the wharf is about 60 feet wide, and at low-water line it is from 80 to 100 feet in width. The wharf is constructed on Market street, a public highway, and on ground on

either side, which the Messrs. Walker claimed, and which they agreed the borough might take for the wharf. These strips of ground so given by the Walkers, respectively, cannot exceed 20 feet in width, and probably are considerably less. They were a contribution to the wharf by the Walkers in lieu of a money subscription. If they ever executed a deed to the borough it has not been produced, or its contents proved. In this connection it is but proper to state that there is evidence that before the construction of the wharf all the ground within its lines was freely used by the public. It is further shown that along its entire water front the wharf extends out into the river at least from 10 to 15 feet beyond the low-water line.

From the established facts my conclusion is that the claim of the borough to wharfage, based on its alleged riparian ownership, cannot be maintained. The only part of the land embraced in the wharf, to which the borough can assert any sort of title, is the two narrow strips on either side of Market street donated by the Walkers. But, under the proofs, that transaction looks to me like a simple dedication of the ground by the Walkers to the public for the purpose of a wharf. But if not, and the borough is invested with the ownership, this fact, it seems to me, is insufficient to sustain the claim of the borough, for several reasons: *First*, it is the settled law of Pennsylvania that on navigable streams, such as the Monongahela river, the title of the riparian owner extends only to the ordinary low-water line. *Wainwright* v. *McCullough*, 63 Pa. St. 66; *Poor* v. *McClure*, 77 Pa. St. 214. The title to the bed of the river is in the commonwealth for the use of the whole community, (Id.,) and the riparian owner has no right to erect a wharf beyond low-water mark, (*Naglee* v. *Ingersoll*, 7 Pa. St. 185, 201; *Tinicum Fishing Co.* v. *Carter*, 61 Pa. St. 31;) and the title to the structure so located follows the title to the bed of the river. Id. In the second place, the wharf in the main is constructed upon the public street, and the incorporation into it by the borough of the two small pieces of ground in question does not deprive the wharf of its public character. *Accessorium non ducit sed sequitur siuum principale.* Finally, the steam-boat Geneva merely touched at the wharf to receive or discharge passengers and cargo, and it is not affirmatively shown that she used anything but the mouth of the street.

Let a decree be drawn dismissing the libel, with costs.

See *Parkersburg & O. R. Transp. Co.* v. *City of Parkersburg*, 2 Sup. Ct. Rep. 732.