CITY OF CHESTER v. HAGAN.

(District Court, E. D. Pennsylvania. June 3, 1902.)

1. MUNICIPAL CORPORATIONS—AUTHORITY TO COLLECT WHARFAGE—MODE OF EXERCISE.

A municipal corporation of Pennsylvania cannot collect wharfage for the use of a public wharf in the absence of express legislative authority, and where such authority is granted, and the manner of its exercise prescribed, such mode must be followed.

2. SAME—PENNSYLVANIA STATUTE.

Under Pa. Act 1889 (P. L. 277), which provides that "every city of the third class in its corporate capacity is authorized and empowered to enact ordinances for the following purposes: To erect wharves on navigable waters adjacent to the city, regulate the use thereof, collect wharfage and establish wharf and dock lines,"—a city of the class named cannot collect wharfage for the use of a public wharf unless it is imposed by ordinance either fixing a schedule of rates or delegating authority to some agency to do so.

In Admiralty. Suit to recover wharfage.

Joseph Hill Brinton, for libelant.
John A. Toomey, for respondent.

J. B. McPHERSON, District Judge. This action is brought to recover charges for the use of a wharf belonging to the city of Chester. The respondent is the owner of several barges that are sometimes taken up Chester creek, at the mouth of which the wharf is situated. Both in going up and in coming down they may be moored at the wharf for varying periods of time, and whenever they are thus moored a charge of one dollar for each day is made by the city. Defense is taken upon the ground that no authority of law has been shown for the imposition of this charge, and, in my opinion, the defense must be sustained.

The wharf was originally built by the United States government, and was conveyed to the city of Chester in 1886, under the authority of an act of congress passed in that year. It was not erected, therefore, in the exercise of any right of the city growing out of riparian ownership, and is to be treated as if it had been originally constructed by the city for public use. The power of the libelant, which is a city of the third class, to erect wharves and to impose and regulate

chai ges therefor, is to be found in the Pennsylvania act of 1889 (P. L. 277). Article 5 of that statute, in section 3, cl. 32, declares that:

"Every city of the third class in its corporate capacity is authorized and empowered to enact ordinances for the following purposes: * * *

"To erect wharves on navigable waters adjacent to the city, regulate the use thereof, collect wharfage, and establish wharf and dock lines."

This is the source of the city's power to impose charges for the use of its wharves, and it will be observed that such charges must be imposed by ordinance. This being the statutory method of exercising the power, it seems to me to follow that the method is exclusive. From the evidence before the court,—and the fact is apparently not denied,—the city has never passed an ordinance upon this subject. The first action that was taken was a resolution passed by both branches of council in October, 1896, but not signed by the mayor, in these words: "Motion that Mr. Pyke have charge of Edgemont avenue pier, and collect wharfage for the same, was carried." This resolution doubtless contemplates that a charge shall be made for the use of the wharf, but no attempt is made to fix a schedule of rates. In December of the same year a second resolution was passed by councils: "On motion all transient boats be charged $2 per day." This resolution also was not signed by the mayor, and, moreover, even if it had been signed, it would not apply to the present controversy, for the charge that the city is now seeking to collect is only $1 per day, and is imposed under a schedule upon which councils are not shown to have acted. The keeper of the wharf testified that several years later than 1896—the precise date does not appear—he was directed by the property committee of councils to make certain charges, a list of which was put in evidence, and contains the charge in question, and that since that date these charges have been collected. The libelant relies upon this direction of the property committee, but, to my mind, it is an insufficient authority. There is no evidence to show what are the powers of the property committee, and no ordinance has been offered attempting to delegate to that committee the power of councils over this subject. It seems clear to me that, in the absence of evidence showing the powers of the property committee, their action is not to be regarded as equivalent to an ordinance, and that as no ordinance has ever been passed by councils fixing rates, or giving to some agency authority so to do, there has been no lawful exercise of the power conferred by the act of 1889.

It was suggested at the argument that the sums in controversy could be collected on the basis of a quantum meruit, and that the absence of an ordinance was of no importance; in other words, that the respondent, having made use of property belonging to the city, was bound to pay a reasonable sum for such use, although there is no ordinance regulating the charge. I do not agree with this position, because it obviously amounts to a practical repeal of the statute. The act of 1889 declares that charges for the use of a city's wharves are to be made by ordinance, and this, I think, means that they are to be made by ordinance only. Otherwise, the city could disregard the act entirely,—a conclusion not lightly to be reached.

The history of legislation in Pennsylvania concerning municipal corporations puts it beyond doubt that this act was intended to be the one source of power for cities of the third class, and in my opinion every reasonable construction should be adopted that will accomplish this result. The intention of the legislature appears clearly from the act itself, for by article 19, § 3, it is expressly provided that:

"It shall be the duty of the councils of every city of the third class forthwith to pass such ordinances in accordance with the provisions of this act, as may be necessary to carry into effect the requirements thereof."

It is unnecessary, however, to discuss the subject further, in view of an express decision in this circuit. The case is The Geneva (D. C.) 16 Fed. 874, in which Judge Acheson decided that:

"A municipal corporation claiming the right to exact wharfage for the use of a public wharf must show a plain legislative grant of the franchise; and such authority cannot be deduced from the powers to lay out, regulate, and exercise all needful jurisdiction over roads, streets, lanes, and alleys, and to make laws, ordinances, by-laws, and regulations for the good order and government of the municipality not repugnant to, or inconsistent with, the laws of the commonwealth."

See, also, a note in the same volume on page 895. In accordance with this decision, I hold that the libelant cannot collect these charges on the footing of a quantum meruit; and I hold, also, that they cannot be collected under the act of 1889, because, while that statute undoubtedly confers the franchise to charge wharfage, the manner of exercising the franchise which is prescribed by the same statute has not been followed.

A decree may be entered dismissing the libel, at the costs of the libelant.