CONRADT v. MILLER et al.

(Third Division. Fairbanks. June 16, 1905.)

No. 271.

1. MUNICIPAL CORPORATIONS—HIGHWAYS—GRANT TO PRIVATE USE.
   Navigable streams in Alaska and public streets in incorporated towns are public highways, and no portion of either can be granted to private persons by the town council in perpetuity for the erection of wharves.

   [Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 1469.].

2. SAME—RIGHTS OF PRIVATE PERSONS—INJUNCTION.
   Injunction will issue to prevent the building of wharves or warehouses by private persons on the public highway or navigable streams in front of plaintiff's property, where he shows a special injury by closing his free access or increased danger from fire.

   [Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 1503.]

3. SAME.
   Incorporated towns in Alaska have only such powers of government as are expressly granted to them by Congress and such implied powers as are necessary to carry into effect those that are specifically granted. No powers can be implied except such as are essential to the objects and purposes of the corporation as created and established.

   [Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 149.]

4. SAME—FRANCHISES—WHARVES.
   Incorporated towns in Alaska have power "to provide for the location, construction, and maintenance of the necessary * * * wharves," and "to provide for * * * wharfage." *Held*, that this grant did not empower the town council to grant a franchise to individuals to build wharves on the public streets and navigable waters abutting thereon, and to collect tolls from the public for using the same.

This is a suit to abate a public nuisance caused by the erection by defendants of a wharf in front of plaintiff's property in

2 A.R.—28

the incorporated town of Chena, and along the bank of the Tanana river. The respective positions of plaintiff's and defendants' claims, and the locations of the various streets abutting thereon, is shown by the following plat:

In the winter of 1902 the plaintiff, Conradt, located a lot on the public lands along the water front of the Tanana river, beginning at a point on the water line, and running up stream 50 feet, parallel to the river, and 260 feet back from the river at right angles thereto. The front 60 feet lying along the river was by common consent used by the people of the town as, and called, Front street. Some time after he entered into possession of the ground, and prior to the acts complained of on the part of the defendants, Conradt and the adjoining down stream lot owner opened a street between them, each contributing 20 feet of his lot to that purpose, which they called State street, and which thereafter, and at the time of the entry of defendants, was used by the public as a street. Conradt then had a corner lot 30 feet wide by 200 feet long, bounded on the front by Front street and on the side by State street.

Thereafter, and prior to the time when defendants entered upon the water front, the town of Chena was incorporated under the laws of Alaska relating to the incorporation of towns. On October 3, 1904, the town council of Chena passed ordinance No. 15, granting to defendants, Miller, Fisher, and Palmer, the right, privilege and franchise to construct, erect, maintain, and operate à wharf and warehouse or wharves and warehouses on the water front in the town of Chena, Alaska, to be located in respect to plaintiff's property as is shown upon the above plat.

This suit was begun by plaintiff to abate the superstructures or wharves and warehouses thereon as a public nuisance; the plaintiff alleging special injury by reason of closing his access to, his ingress from, and egress to, the navigable waters of the Tanana river, and the closing of Front and State streets in front of his property, and the greater danger from fire caused by the near proximity of the warehouses.

Defendants answer, and justify their erection of the wharves and warehouses in front of plaintiff's property under the power granted to them by ordinance No. 15 to erect wharves and warehouses, and also deny plaintiff's title to any part of either Front or State streets by reason of dedication to the public as streets, and deny his riparian title to, or interest in, the river front because of the existence of Front street between his property and the navigable water.

Heilig & Tozier and David T. Roy, for plaintiff.
Claypool, Stevens, Kellum & Cowles, for defendants.

WICKERSHAM, District Judge. The first question to be considered in this case is in regard to the right of plaintiff to maintain an action in equity to abate a public nuisance in front of his property, when he alleges, and his evidence shows, a special injury by the closing of his access to the highway, by barring his former access to the navigable river, and by in-

creasing the danger of the destruction of his property by fire. Dillon lays down the rule that:

"As to the right to relief in equity, it may be considered as settled that a party entitled to a right of way over a street may be protected in the enjoyment thereof by restraining the erection of obstructions thereon; but the mere allegation of irremediable mischief from the acts complained of is insufficient. Facts must be stated to show that the apprehension of injury is well founded." Dillon, Mun. Corp. (4th Ed.) § 661.

The abutter's right to equitable relief is sustained in Ashby v. Hall, 119 U. S. 526, 7 Sup. Ct. 308, 30 L. Ed. 469, and the right of private persons to enjoin an obstruction of navigable waters where the individual complaining suffers special damage is sustained in Georgetown v. Alexandria Canal Co., 37 U. S. (12 Pet.) 91, 99, 9 L. Ed. 1012. In this case the court held that the municipal corporation could not maintain the suit. In Cincinnati v. White, 31 U. S. (6 Pet.) 431, 8 L. Ed. 452, the court also held that the possessory action of ejectment would not lie. Coburn v. Ames, 52 Cal. 385, 28 Am. Rep. 634.

In Heine v. Roth (page 416, supra), this court has had occasion to examine into these questions, and held that where a road or highway adjoins and runs parallel to the highwater mark of a navigable river, both the road and river constitute a highway (Barney v. Keokuk, 94 U. S. 324, 340, 24 L. Ed. 224), and that unauthorized obstructions upon either may be abated as a nuisance by the abutting landowner, whose access is cut off by buildings and other structures (Barney v. Keokuk, 94 U. S. 342, 24 L. Ed. 224); and that rule must prevail here, unless the defendants have acquired rights under this grant of a franchise from the town to erect a wharf and warehouse at this point.

It is conceded that ordinance No. 15 authorizes the defendants to build the wharf and warehouses, but plaintiff denies the right of the town to pass the ordinance, and makes other objections to its validity. The court will consider the one

which is fundamental—has the town council of an incorporated town in Alaska power to grant such a franchise? What powers has a municipal corporation?

In Ottawa v. Carey, 108 U. S. 110, 121, 2 Sup. Ct. 361, 364 (27 L. Ed. 669), the Supreme Court of the United States said:

"Municipal corporations are created to aid the state government in the regulation and administration of local affairs. They have only such powers of government as are expressly granted them, or such as are necessary to carry into effect those that are granted. No powers can be implied except such as are essential to the objects and purposes of the corporation as created and established. 1 Dill. Mun. Corp. (3d Ed.) § 89, and cases there cited. To the extent of their authority they can bind the people and the property subject to their regulation and governmental control by what they do, but beyond their corporate powers their acts are of no effect. * * * No matter how much authority there may be in the Legislature to grant a particular power, if the grant has not been made the city cannot act under it." Barnett v. Denison, 145 U. S. 135, 12 Sup. Ct. 819, 36 L. Ed. 652; Hill v. Memphis, 134 U. S. 198, 10 Sup. Ct. 562, 33 L. Ed. 887.

In the section which the Supreme Court approves Dillon says:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporations—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void." 1 Dill. Mun. Corp. (4th Ed.) § 89.

Dillon lays down an additional rule, which is applicable to and controlling in this case, and it is this:

"While the riparian proprietor has the right to erect wharves which are private in their nature, but which may be used by the public with

the consent of the owner, expressed or implied, the right to erect public wharves and to demand tolls or fixed rates of wharfage is, according to the better view, a franchise, which must have its origin in a legislative grant." 1 Dill. Mun. Corp. (4th Ed.) § 108; The Geneva (D. C.) 16 Fed. 874; The Empire State, 21 Fed. Cas. 23, No. 12,145; City of Chester v. Hagan (D. C.) 116 Fed. 223.

In the case at bar the defendants can only sustain their claims by showing a valid franchise from the town of Chena to erect and maintain the wharf and warehouses, and to charge tolls or wharfage for their use. What legislative grant of power has a town council in Alaska to grant such a franchise?

By "an act to amend and codify the laws relating to municipal corporations in the District of Alaska," approved April 28, 1904, c. 1778, 33 Stat. 529, Congress granted enlarged powers to such towns, and expressly mentioned all the powers which it was intended such towns should possess or exercise. Section 4 of the act provides:

"That the said common council shall have and exercise the following powers, * * * Fourth. To provide for the location, construction, and maintenance of the necessary streets, alleys, crossings, sidewalks, sewers, and wharves. * * * . Sixth. To provide for fire protection, water supply, lights, wharfage, public health, and police protection, and the relief of the destitute and indigent."

Town councils in Alaska seem to have no other authority or power in relation to wharves than those given in these two paragraphs, and no direct authority is shown to the court which confers power to grant a franchise for those or any other purpose.

Power to provide for the location, construction, and maintenance of the necessary wharves imposes upon the council a public duty, as well as the power to perform it. When it shall appear necessary to the council to provide these useful aids to commerce, it becomes their official duty to locate and determine where the wharf shall be built, to construct or build it, and thereafter to maintain it and keep it in repair. A power given by the Legislature to a common council of a town to

locate, construct, and maintain wharves does not authorize the council to grant a franchise to private persons to perform the acts and charge tolls for the use of the wharf. The council cannot delegate to others, surrender, or renounce its official duty. Illinois Ry. Co. v. St. Louis, 2 Dill. 70, 12 Fed. Cas. 1204, 1205, No. 7,007. In this case the court, by Judge Dillon, said:

"The only powers delegated to the city by the Legislature in respect to wharves have been before mentioned, and they are, in substance, to erect, repair, and regulate them, and to pass ordinances to promote the welfare, commerce, and trade of the city. These are public or legislative powers, incapable in their nature of delegation or of surrender by the municipality."

To provide for wharfage means to make provisions therefor. "Wharfage is the compensation which the owner of a wharf demands for the use thereof." Transportation Co. v. Parkersburg, 107 U. S. 691, 2 Sup. Ct. 732, 27 L. Ed. 584.

"Water crafts of all kinds necessarily lie at a wharf when loading and unloading, and Mr. Benedict says that the pecuniary charge for the use of the dock or wharf is called 'wharfage' or 'dockage,' and that it is the subject of admiralty jurisdiction; that the master and owner of the ship and the ship herself may be proceeded against in admiralty to enforce the payment of wharfage when the vessel lies alongside the wharf, or at a distance, and only uses the wharf temporarily for boats or cargo. Benedict Adm. (2d. Ed.) § 283." Ex parte Easton, 95 U. S. 68, 76, 24 L. Ed. 373; Am. & Eng. Ency. of Law (1st Ed.) vol. 29, p. 89.

The power to provide for wharfage in the provision quoted from the statute means that the common council shall provide for reasonable wharfage rates. The town would have no power to collect wharfage in the absence of express legislative authority, and where such authority is granted, and the manner of its exercise prescribed, such mode must be followed. City of Chester v. Hagan (D. C.) 116 Fed. 223. This power the town council cannot delegate, surrender, or renounce, and an attempt to do so gives no support to the franchise relied on in this case.

In the absence of special affirmative legislation, an incorporated town in Alaska has no authority to grant a franchise to an individual or corporation which will authorize the grantee to take exclusive possession in perpetuity of a portion of the street and river bank of a navigable river, and erect wharves and warehouses thereon, and charge the public wharfage or toll for using it. Illinois Ry. Co. v. St. Louis, 2 Dill. 70, 12 Fed. Cas. 1199, No. 7,007.

In the case at bar the town council of Chena has attempted by ordinance to grant an exclusive and perpetual franchise to the defendants to erect and maintain a wharf and warehouse on the street and water front, and to charge not to exceed $1.50 a ton wharfage for all freight landed there. If the council has such authority, what is its limit? If it has authority to grant defendants a portion of the river frontage and wharf privileges, it may grant all; if it may grant 10 feet of the street, it may grant all; if it may grant wharf and warehouse rights in perpetuity without return or reservation, with the right to fix wharfage rates below the high water maximum, the logical result is that it may grant all, and make a complete surrender of all public rights and property to franchise applicants, and thus substitute for an official control by the people a private control by individuals. That Congress ever contemplated or intended that town councils in Alaska should have such complete power to dissipate public rights and property, and abdicate official control over them, has not been satisfactorily shown to the court, and without such was the intention, and is so clearly and forcibly expressed by congressional enactment as to be beyond doubt, the courts ought to be slow to decree that effect.

Where a public street bounds a navigable river bank in Alaska, no private person can acquire a right of possession or ownership in either. Both constitute a public highway, and Congress has not given permission to, or conferred any power upon, the

town council to convey any interest in either to any person or corporation, by franchise or otherwise. But Congress has imposed the duty upon the town by their common councils to lay out and improve the street, and to locate, construct, and maintain wharves, and to regulate wharfage thereon. This public duty the council should perform as public officials with public funds, and the wharf must be, in the strictest sense, a public wharf, though reasonable rates of wharfage may be levied and collected by the town.

Congress has also declared that it will adopt the same general policy in dealing with tide lands and the beds and shores of navigable streams in Alaska that has controlled their disposition in the United States; the declaration being:

"That all such rights shall continue to be held by the United States in trust for the people of any state or states which may hereafter be erected out of said district." Act May 14, 1898, c. 299, § 2, 30 Stat. 409 [U. S. Comp. St. 1901, p. 1575].

This declaration of the paramount proprietor excludes any claim of inherent or implied right of a town council to dispose of such lands, or to authorize their use by private persons for private purposes. No person can acquire a vested right in such lands as the law now stands, though the abutting owner or occupant in lawful possession, whether it be a homesteader or citizen of an incorporated town, has the right to ingress from and egress over the same, but always subject to the reserved right of the future state. In incorporated towns these rights of the individual are represented by the common council as trustee, and are thus held subject to the power and duty of the council to erect necessary public wharves for the use and benefit of all the inhabitants thereof, upon the payment of reasonable wharfage therefor. Congress has not, however, imposed an additional burden upon the citizens of the town by consenting that his official trustees may grant perpetual fran-

chises to private parties, whereby his right to a free public roadway to the navigable waters may be fettered by private charges.

It is my judgment that the franchise relied upon by the defendants is void because the town council had no power to grant it; that defendants have failed to show any lawful right to erect wharves or warehouses upon the street and river front in the place occupied by them for that purpose and ·described in the ordinance; that their structures there are shown by the evidence to be a public nuisance, because erected by the defendants upon a public highway and in violation of law; that plaintiff has shown such an irreparable and special injury as to authorize equitable relief in his favor by injunction; that he has no plain, speedy, or adequate remedy at law; and that defendants ought to be required by a mandatory injunction to abate the nuisance which damages and threatens his property. Defendant's motion for nonsuit and prayer for relief is denied, and plaintiff will have the relief prayed for.