S. FLEET SPEIR AND OTHERS, AS EXECUTORS OF THE LAST WILL AND TESTAMENT OF ROBERT SPEIR, DECEASED, APPELLANTS, *v.* THE TOWN OF NEW UTRECHT, RESPONDENT.

*What occupation is essential to the establishment of an easement of a public highway in land, by prescription — railway tracks, presumption arising from their use on a road — effect of an order confirming proceedings of commissioners in opening a highway*

In order to establish an easement in lands by use or prescription, the occupation and use of the lands must be plainly for the purpose in view under an unequivocal claim, and if not actually adverse, at least under circumstances leaving the owner at all times free to resist the invasion,

The coincidental use by the public of a private way, which the owners maintain primarily for their own convenience, is permissive and by license, and lacks the essential characteristics of the use required to work a presumption of grant or title in the public for a public highway,

Where, upon a piece of land, which was claimed to be a public way by prescrip. tion, the tracks of a steam locomotive railway had been laid, at one time ten feet in width, and at another and subsequent time twenty feet in width, running through the whole of such piece of land, and the railroad bed was of such a character as to be unsuitable to ordinary highway purposes, and, as a matter of actual obvious fact, this portion of the land in question was not used as and for an ordinary highway:

*Held,* that such facts were inconsistent with the acquirement by adverse possessi of a right of public easement over such land for the purposes of a highway.

*Quære,* whether the bare insertion of the tracks of a horse railway and the operation of its cars upon the lands would be so far inconsistent with the easement of an ordinary highway as to work an interruption of such use of the land.

The fact that the owner of land has agreed with another owner of land, bordering upon the land in question, not to enclose the former's land without the latter's consent has no bearing upon the question of dedication of such uninclosed land to public purposes; nor does it raise any presumption that only nominal dam- ages should be awarded for taking such land for public use.

Where commissioners for the opening of a public way ignore the right of an owner to a portion thereof and treat such portion as though it were already subject to a public right, and as though the title thereto had already been acquired by prescription, and no award is made therefor, an order confirming the proceedings of such commissioners is not conclusive upon the right of the owner of such land.

APPEAL by the plaintiff from a judgment entered in Kings county after a trial at Special Teri

In this action, brought to have an assessment laid upon the lands of the plaintiff, situate at Bath, in the town of New Utrecht, for the opening, grading and improving of Cropsey avenue, declared invalid and void, and asking that the same be canceled of record, it appeared that the lands of the plaintiff had been sold for the non-payment of such assessments; that proceedings for the opening of Cropsey avenue were instituted by a resolution of the board of supervisors, passed May 29, 1884, pursuant to chapter 554 of the Laws of 1881, and the commissioners included within the lines of said avenue, which was to be eighty feet wide, a sixty-foot strip of land for which no award was made, and of which the plaintiff claimed to be the owner in fee. This sixty-foot strip of land had been used by the public generally since 1853, and, in 1862, the

Brooklyn, Bath and Coney Island Railroad Company laid a track in the middle of it, and from that time ran trains over it daily until 1886. The width of this first track did not exceed ten feet. In 1880 another track was laid on the road, making the width of the whole railway line about twenty-two feet. On each side of the roadway a space remained wide enough for vehicles, and the public continued to use the road on each side of the railroad to drive on. There was also a foot-path on each side.

*William C. De Witt*, for the appellants.

*C. Furgeson, Jr.*, and *William Sullivan*, for the respondent.

PRATT, J.:

Chancery welcomes parties who submit their controversies irrespective of technical questions concerning the form of action or regularity of proceedings; and it was the clear duty of the trial judge, under the waiver and stipulation made at the outset of the trial, to give all the rights and issues presented full and final determination. (*Bank of Utica* v. *City of Utica*, 4 Paige Ch., 399; *Grandin* v. *Le Roy*, 2 id., 509.) We cannot see that there was twenty years' user of the land in question as a public highway. During ten of those twenty years a portion of the land, at one time ten feet in width and at another twenty feet in width, and running throughout the whole, was occupied under a license from the owner, by a steam locomotive railway, the cross ties of which were on a level with the surface, the tracks of which projected above the surface, and the trains of which were passing and repassing with great frequency during the larger portion of the year. This railroad bed was, as is found by the court below, unsuitable to ordinary highway purposes, and, as matter of actual obvious fact, this portion of the land in question was not used as and for an ordinary highway.

It is elementary law that to establish an easement in lands by use or prescription the occupation and use of the land must be plainly for the purpose in view under an unequivocal claim, and if not actually adverse, at least under circumstances leaving the owner at all times free to resist the invasion. The coincidental use by the public of a private way which the owners maintain primarily for

their own convenience is permissive or by license, and lacks the essential characteristics of the use required to work a presumption of grant or title in the public for a public highway. The authorities in support of these propositions are too numerous for citation; nor do we think the case of *Devenpeck* v. *Lambert* (44 Barb., 596) — wherein the use in question was primarily and wholly by the public as and for a public highway, and it was held to be sufficient under the statute even if not adverse (a matter still in doubt). *In re Bridge*, 100 N. Y., 642 — militates against the fundamental rules above stated. But in any event here there was not twenty years use of the land for a public highway as a matter of fact.

It might be that the bare insertion of the tracks of a horse railway and the operation of its cars upon the lands would be so far consistent with the easement of an ordinary highway as not to work an interruption of such a use, although we think the Court of Appeals has negatived the doctrine of the inclusiveness of easements in such a case. (*Heard* v. *Brooklyn*, 60 N. Y., 242; *Strong* v. *Brooklyn*, 68 id., 1.) But where the occupation of the way by the railroad is physically and actually exclusive, the way cannot, as matter fact, of be deemed occupied by another and distinct easement. This strip of twenty feet was as actually and exclusively occupied by the railroad as if a building had been erected thereon. It is clear, therefore, that the so-called sixty foot strip did not become a public highway by such use for a period of twenty years. It is, however, just as fatal to the case of the respondent if only the ten of twenty feet was not acquired by prescription, as in that case even the street has never been acquired by the public, and that for which the assessment in question was laid never had an existence.

The counsel for the respondent, however, argued, with much force and erudition, that the lands had become a highway by dedication. The difficulty here is that the evidence established and the court found the fact against him. From the form and character of the way in question, and from the acts and declarations of the parties, the trial judge has found that it was not dedicated to the public but reserved to private use and control, and there is no visible ground upon which this finding can be reversed. Besides, the case does not contain any evidence of acceptance by the public, even if

a dedication could be presumed. The fact that an owner had agreed with another owner of land, bordering upon the land in question, not to close it without the latter's consent, has no force upon the question of dedication, neither does it raise any presumption that only nominal damages could be awarded for taking the land for a public use. (*Roberts et al.* v. *Sadler*, 104 N. Y., 234.) It was an agreement between private parties, and when both parties consented the way could be closed. The usual accompaniments of a dedication are wholly wanting. No map was ever filed by the owner and no lots sold as bounded upon a public way, and the public authorities never worked or kept in repair the way or exercised any jurisdiction over it. The authorities all hold that an intent to dedicate must be deliberate, decisive and unequivocal to effect a dedication. (*Holdane* v. *Cold Spring*, 21 N. Y., 477; *Cooke* v. *Harris*, 61 id., 448; *Niagara Falls Susp. Bridge Co.* v. *Bachman*, 66 id., 269.) Touching the question of estoppel by former adjudication, we think the appellant clearly right.

The commissioners for the opening of the avenue did not in any way pass upon the question involved in the present action. Throughout their proceedings they ignored entirely the sixty-foot private way. They assumed it to be and treated it as already a public road, omitted it from the parcels of land to be by them acquired, and left the public to defend a title which they regarded as already acquired by prescription. The matter is not adjudicated by that proceeding because it was eliminated from the proceeding, or, in other words, it was never taken into the proceeding. Besides, we think the decision of the Court of Appeals in *Dolan* v. *Mayor* (62 N. Y., 472) is not applicable to the present case. The assessment before the court in that case was governed by a special act of the legislature, passed in 1813, and was protected by statutory provision from attack upon the technical grounds advanced.

On points confined to the regularity of the proceedings to confirm, the order of confirmation might well be held conclusive. But to say that such an order is final and conclusive in all cases where lands are sought to be taken for public use, however unconstitutional or invalid those proceedings may have been, would be to render them unassailable, and we do know that they have been overthrown and declared void in a multitude of cases with the approval

of our court of last resort. At all events, where, in proceedings *in invitum*, no award has been made, or attempted to be made, for a person's land, but, on the contrary, those lands have been thrown out of all consideration, it cannot be said, as matter of legal inference, that such lands have been acquired by the public and lost to the owner despite the constitutional provision that private property cannot be taken for public use without compensation.

For these reasons we cannot concur with the judgment of the trial court. It will not be necessary, however, to order a new trial. There being no dispute of fact, the judgment below should be reversed and judgment entered for the plaintiff, with costs.

DYKMAN, J., concurred; BARNARD, P. J., dissented.

Judgment reversed and judgment ordered for plaintiff, with costs.