### In re HOWLAND BRIDGE.

*(Supreme Court, General Term, Fifth Department.    June 2, 1891.)*

HIGHWAYS—DEDICATION—EVIDENCE.

One H. built a bridge from his land in the town of C. across a river which was the boundary line between the towns of C. and M., and acquired from the land-owner on the opposite side of the river, in the town of M., the right to open and use a road through such owner's land from the bridge to the highway in that town. Afterwards H. sold to a turnpike company a road-way from the bridge across his land in the town of C., the deed providing that the title should revert to H. whenever the company should cease to maintain and use the road. The company having subsequently ceased to do business, H. resumed possession of the property conveyed by him. *Held*, that the road opened by H. in the town of M. to connect his bridge with the highway was not itself a highway, its use by the public in connection with the road over the land of H. having been interrupted when H. resumed possession of the road-way over his land.

Appeal from special term, Cayuga county.

Application of certain freeholders of the town of Montezuma for an order requiring the repairing or rebuilding of a bridge between the towns of Montezuma and Conquest, known as "Howland Bridge." Two appeals were taken,—(1) by petitioners, from an order entered on the 26th day of May, 1890, denying their application, and (2) by the towns of Montezuma and Conquest, from an order dated July 28, 1890, denying costs to them.

Argued before DWIGHT, P. J., and MACOMBER, J.

*James Wright,* for petitioners and appellants. *Charles M. Baker,* for respondent and appellant Town of Conquest. *J. W. O'Brien,* for respondent and appellant Town of Montezuma.

MACOMBER, J.    The towns of Conquest and Montezuma join each other in the county of Cayuga, the northerly line of Montezuma being the southerly line of Conquest; and are divided by a branch of the Seneca river. In the south-westerly part of the town of Conquest is an island, known as "Howland's Island," being oval shape, the longest diameter being north and south, containing 3,500 acres of land, formed by two branches of the Seneca river, the general course of which is northwardly, the right branch running around the southerly and easterly side of the island, and dividing these towns, and the left branch running on the westerly side of this island, and dividing the town of Conquest from the town of Savannah, in the county of Wayne, a part of the distance; and so around the north-westerly, northerly, and north-easterly side of the island, where it meets and unites with the right branch. It has living upon it about 25 families. This island was owned by Humphry Howland in 1825. Prior to April, 1834, he built a bridge over the south or east branch of Seneca river at the site of the present Howland's Island bridge, which bridge was known as "Howland's Bridge," and which was free to every one who wished to pass, until the same was taken possession of by the Port Byron & Savannah Turnpike, Road & Bridge Company, a corporation organized by chapter 318 of the Laws of 1845. This company had the right to build a bridge across the south or east branch of the Seneca river, at or near the bridge of Humphry Howland, but so as not to interfere with the bridge without compensation to Howland, and also a bridge across the north or west branch of the river, together with a road across the island. Prior to this time, and about the year 1832, Humphry Howland built a bridge on the site of the bridge in question, having obtained permission of one Cuykendall to make and use a road across the latter's land from the south end of the bridge to the highway. Humphry Howland conveyed to the turnpike, road, and bridge company a road-way from Howland's bridge to the place where another bridge known as the "Galen Bridge" had been built, by a deed containing a condition that the title should revert to Howland whenever the company should cease to maintain and use the turnpike road on such land. The road-way so conveyed included the part of a private highway running north from Howland's bridge, which had been laid out by the highway officers of the town of Conquest. In the years 1855 and 1856 proceedings were instituted in this court which, under a judgment recovered against the turnpike, road, and bridge company, resulted in a sale of the entire property and franchises of that corporation, which were bought in by William Penn Howland. Thereupon Humphry Howland took possession of the property mentioned in his deed to the company, whereby the same should revert to him in case of the non-use of the same by the corporation. William Penn Howland removed the old bridge, and built a new one in its place in about the year 1867. Upon these facts the learned referee to whom the case was referred has reported adversely to the prayer of the petition of the freeholders of the town of Montezuma, and such report has been confirmed by this court at special term, and from the order thereon one of these appeals is taken. The application of the petitioners is made under chapter 639 of the Laws of 1857. As the learned referee has shown in his opinion, there can be no liability under that statute unless there is a lawful highway in each town, which highways are or would be connected by the bridge. *Beckwith* v. *Whalen,* 70 N. Y. 430. This, being a special statutory proceeding, can only be maintained in cases specifically authorized by the statute. *In re Cattaraugus Co.,* 59 N. Y. 316. The reasoning of the learned referee upon the question whether there is a highway on the Con-

quest side of this branch of the river seems to be so conclusive that we do not hesitate to adopt it.    It is as follows: "I will therefore consider the question first as to whether there is a highway on the Conquest side.    The road on that side north of and connecting with the Howland Island bridge was not laid out as a highway, but as a private road, but after the Port Byron & Savannah Turnpike Road & Bridge Company acquired their rights in it and over it, and so long as they operated it, it became and was a public highway in the sense that all had the right to free and uninterrupted travel over it at all times, upon paying the requisite toll, but when the turnpike and bridge company abandoned it, it reverted to its former condition, under the provisions of the deed from Humphry Howland to said company.    I am also of the opinion that under the facts the said road has not become a public highway under 1 Rev. St. 521, § 100, which provides that 'all roads not recorded which have been or shall have been used as public highways for twenty years or more, shall be deemed public highways,' because this road has been recorded and re-corded as a private road, and because of the interruptions to such uses which have prevented its use.    *Devenpeck* v. *Lambert*, 44 Barb. 596; *Shellhouse* v. *State*, 110 Ind. 509, 11 N. E. Rep. 484.    See, also, *Speir* v. *Town of New Utrecht*, 2 N. Y. Supp. 426.    I am further of the opinion that the facts do not show a dedication of this road as a public highway, or an acceptance of it, by the proper authorities or by the public as a highway.    The authorities are that to constitute a dedication of a public highway an intention to dedicate on the part of the owner must be clearly and unequivocally shown, and some are of the effect that an intention to accept must clearly appear.    *Fisk* v. *Havana*, 88 Ill. 209.    In New York it is held that the acts and declarations of the owner must be unmistakable in their purpose, and decisive in their character, show-ing an intention to dedicate absolutely and irrevocably to the public use. *Bridge Co.* v. *Bachman*, 66 N. Y. 261.    'The authorities all hold that an intent to dedicate must be deliberate, decisive, and unequivocal to effect a dedica-tion.'    *Speir* v. *Town of New Utrecht*, 2 N. Y. Supp. 426.    And, as bearing upon this, I also refer to 1·Rev. St. p. 507, § 29, by which 'it is made the duty of the highway commissioners to credit to such persons as live on private roads and work the same as much on account of their assessments as such commissioners may deem necessary to work such private roads; or annex such private roads to some of the highway districts.'    And it is also noticeable that none of the freeholders in Howland's island (who own the fee of the land over which the roads of the island run) are applicants in this matter.    I am therefore of the opinion that this application should be denied, because there is no connective highway in the town of Conquest, without considering whether the road in Montezuma is a highway, and I have therefore refused to make or pass upon certain findings in relation thereto which were requested by the counsel for the applicants.    In my opinion the practical discontinuance of the use of said branch of said river for purposes of navigation, the many acts of the legislature permitting the bridging of said river, including the act for the incorporation of the said turnpike and bridge company, are an abandonment of the public right of navigation, notwithstanding the act passed in 1813, de-claring it to be a public highway."    It follows, therefore, that the order on the merits of the case dismissing the petitioner's application was correct, and should be affirmed.

There remains, however, another question presented by the appeals of these two towns, touching the matter of costs.    Section 7, c. 639, of the Laws of 1857, is to the effect that the supreme court at special term or a judge at cham-bers shall have power to grant or refuse costs as upon a motion, including also witnesses' fees, referee's fees, and disbursements in proceedings of this character.    The order made upon this subject was at another term of court, where the matter was brought up upon affidavits, in which an additional allowance of costs was asked by the successful parties on the ground that the

case was difficult and extraordinary. Ordinarily, where the discretion of the court or judge has been duly exercised, the appellate branch of the same court should not interfere therewith; but in this particular instance we think that there could not have been brought to the attention of the learned justice at special term the fact that at the first hearing before the referee the parties stipulated that the referee's fees should be fixed at a certain sum, and that they should be part of the costs of the proceedings, to be taxed as other costs, including the stenographer's fees and referee's fees. The case before us discloses no reason why costs should not have been allowed in this case. The appeal, therefore, of the town from the order of the special term must be upheld. It follows that the order denying the petitioner's application be affirmed, and that the order of the special term, relating to costs, be reversed with separate bills of costs to the two towns appearing separately by attorney, together with the separate bills of costs of this appeal to such towns.