The City of Buffalo, Appellant, v. The Delaware, Lackawanna and Western Railroad Company, Respondent.

1. Streets and Highways — Existence and Duration of Street. Where land has been taken for a street through dedication by its owners and acceptance by the municipal authorities, it remains a street until it ceases to be such by the action of the general public in no longer traveling upon it, or by the action of the public authorities in formally closing it.

2. Same — Effect of Erection of Dock over Street. When a private dock is built over a public street upon the shore of navigable waters, the dock becomes part of the street and the public has a right to travel over it, since ownership of the dock is not inconsistent with the existence of the street any more than ownership of the land over which the street extends.

3. Same — Right of Owner to Erect Dock over Street Does Not Involve the Right to Appropriate the Street Exclusively to His Own Use. While an upland owner has the right to build a dock over a street, the fee of which is in himself, out to navigable water, that right does not involve the right to appropriate the street or to make an unreasonable use thereof. The owner of land can neither create nor destroy a highway over it, without the co-operation of the public. He cannot destroy a highway over his land by any action whatever taken by himself alone. If he obstructs it, the public authorities can compel him to remove the obstruction and punish him for creating it. (Penal Code, § 385; Highway Law, § 104.) The erection of a dock is no exception to the rule. If the dock prevents public travel, it can be removed. If it does not obstruct travel, it becomes part of the street, and may be used by the public for all legitimate street purposes.

4. Buffalo (City of) — Action to Re-establish a Public Street — When Finding Classified as "Conclusion of Law" Is a Finding of Fact. Where in an action brought to secure a judicial determination that a portion of the river front in the city of Buffalo, which had been dedicated and accepted as a street, but had been used as a wharf by the abutting owner, a railroad company, for many years, was a public street, and to compel the railroad company to remove certain obstructions therefrom, the trial court found "that for a period of six years and more prior to the commencement of this action the said premises herein designated as 'Front street,' ceased to be traveled or used as a public highway," such finding is not a finding of law but of fact, although denominated a "conclusion of law;" since the cessation of user and travel upon a street for the period prescribed involves a question of fact and traveling upon a street is an act or series of acts which can be seen and described. Giving a wrong name to a finding does not change its nature, and if it is placed under the head of "conclusions of law," when it is a finding of fact, it will be treated on appeal as what it really is, at least for the purpose of upholding a judgment.

5. Streets and Highways — When Erection of Dock upon Public Street Does Not Destroy the Street or Annul the Rights of the Public Therein. Where it appears in such action that the river front in question had been tendered to and accepted by the municipal authorities as a public street, prior to 1826; that such street still existed in 1838, when a dock was built by the abutting owners over and upon the land owned by them constituting said street, covering it for its entire width and length, and that from that time to this the abutting owners have used the dock for dock purposes and the general public have used it for highway purposes, neither use excluding the other altogether, although doubtless interfering with it to some extent, the construction and use of the dock by the abutting owners did not destroy the street or annul the rights of the public therein. Two rights co existed. The defendant, as owner of the river front, had the right to reach the water. As there was a street along the river front over the defendant's land the public had the right to use the street. The building of the dock changed neither right. Both continued to exist, although under changed conditions. They met but did not merge, nor did either destroy the other. The defendant had the right to use its dock, as a private dock, subject to the right of the public to travel over it, as they had previously traveled upon the land over which it was built.

6. Inconsistent Findings of Fact — When Court May Reject One and Accept the Other. Where a finding, called a "conclusion of law," but in reality a finding of fact, that the street in question had not been traveled or used as a public highway for more than six years before the commencement of the action, is inconsistent with another specific finding of fact that the public had used the dock continuously from the time it was

built, both for foot and vehicle traffic as a way of communication between two intersecting streets, the two findings cannot be reconciled, except upon the erroneous theory that the street was no longer in existence after the dock was built; hence the former finding must be rejected and the latter accepted with the same force and effect as if it was the only finding upon the subject ; and where this leaves the conclusion of law that the railroad company is entitled to the exclusive use, possession and occupancy of the street and that the city is not possessed of any right, title or interest therein, without any finding to support it, the judgment entered thereon is erroneous and must be reversed.

*City of Buffalo* v. *D., L. & W. R. R. Co.*, 111 App. Div. 915, reversed.

(Argued October 25, 1907; decided November 19, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 20, 1906, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

The object of this action was to secure a judicial determination that a portion of the river front in the city of Buffalo is a public street and to compel the defendant to remove certain obstructions therefrom.    The main issue raised by the answer was whether the *locus in quo*, called Front street, was a public street when the action was commenced. The first trial resulted in two adjudications, *first*, that the portion of the alleged street lying west of Main street is not a public highway ; *second*, that the part lying east of Main street, between Main and Washington, is a public highway. Each party appealed from the judgment so far as it was against itself and the Appellate Division affirmed the first determination, but reversed the second and ordered a new trial, both on the law and the facts, as to that branch of the controversy only.    (68 App. Div. 488.)    The plaintiff thereupon applied to the Appellate Division to so modify its order as to grant a new trial of all the issues, but the application was denied, and upon appeal to the Court of Appeals the order denying the application was affirmed.    (81 App. Div. 655 ; 176 N. Y. 308.)

The plaintiff, which in the meantime had appealed from the

entire judgment rendered by the Appellate Division, then moved for leave to withdraw that part of its appeal relating to the *locus in quo* lying east of Main street, as to which a new trial had been ordered, and the application was granted. (176 N. Y. 594.) When the portion of the appeal then remaining undisposed of was heard by this court the judgment of the Appellate Division relating to the *locus in quo* lying west of Main street was affirmed. (178 N. Y. 561.)

The issue as to the existence of a street on the river front west of Main street having thus been finally determined against the city, the issue remaining as to a street on the east side was tried at Special Term, where the complaint was dismissed.

The trial justice found the following facts, among others: In 1805 the land in question formed part of an extensive tract owned by the Holland Land Company, which caused the same to be surveyed and laid out into lots and streets and a map thereof to be filed with the proper county clerk. This map, entitled the " Plan of New Amsterdam," shows a street without a name running along the north bank of Buffalo river on the east side of what is now Main street, but which then went by the name of Willinks avenue, to and beyond Washington street as now located. No street, however, was laid down on the map as existing on the west side of Main street. Said map shows a lot designated as " outer lot 78," extending from Main street easterly to Washington and bounded on the south by the unnamed street, above referred to. In 1807 the Holland Land Company conveyed outer lot 78 to one Grant, who in 1815 conveyed a portion thereof to one Grosvenor, and in such conveyances the southerly line of lot 78 was referred to as the northerly bounds of Water street, thereby meaning the street appearing on said map without a name. In all subsequent conveyances of said parcel down to that made to one John W. Clark in 1831, a similar description was used.

In 1813 the village of Buffalo was incorporated by an act referring to said map as the sole description of the territory

included.  (L. 1813, ch. 106.)  Said act was revived and continued in force by chapter 164 of the Laws of 1815 and by chapter 79 of the Laws of 1816.  The commissioners of highways of the town of Buffalo were the commissioners of highways of the village of Buffalo until 1826 when the village trustees became the commissioners of highways within the corporate limits.  (L. 1826, ch. 152.)  In 1821 the commissioners of highways of the town of Buffalo caused Water street to be surveyed, described and entered of record pursuant to chapter 33 of the Laws of 1813, and as so surveyed, described and recorded the street was one chain in width.  In 1826 the trustees of the village changed the name to Ohio street, and in 1830 to Front street, and contracted its width to two rods.  Buffalo creek or river, as shown on the plan of New Amsterdam, at the time said map was filed, was and ever since has been a public highway.  On various assessment maps of the city between 1842 and 1846 Front street is delineated from the intersection of the east line of Main street to the west line of Washington street, and on various assessment rolls between 1847 and 1863 property was assessed for local improvements as fronting on Front street in the locality in question.

After finding these facts, among others, the trial court further found as follows:

" *Thirteenth.*  In 1829 the Holland Land Company conveyed an undivided three-quarters of the fee of said Water street, then known as Ohio street, abutting on the southerly line of outer lot 78, to one Clark, and conveyed the remaining undivided one-quarter of said fee to one Scott and one Capron, and the last named grantees subsequently, and in 1833, conveyed the said undivided one-quarter to said Clark.  The said Clark subsequently conveyed the premises herein described, together with said outer lot 78, to various grantees, referring in such conveyances to said premises as ' Front street.'

" *Fourteenth.*  Through the grantees of said Clark by mesne conveyances the said The New York, Lackawanna and Western Railway Company, in or about the year 1891, acquired

the fee of the premises hereinbefore variously referred to as Water street, Ohio street and Front street, abutting on that portion of outer lot 78, lying between Main street and Washington street as now laid out.

"*Sixteenth.* That more than forty years prior to the commencement of this action the grantees of the said Clark, then owning that portion of outer lot 78 abutting on the premises herein referred to as Front street, constructed brick buildings upon their lands fronting on Ohio street, and extending backward to a line substantially the northerly line of the premises herein designated as Front street, as contracted to two rods in width; that between such brick structures and the Buffalo River, and upon the premises herein designated as Front street, such grantees caused to be constructed, in or about the year 1838, a dock and wharf, and that such dock and wharf has ever since been maintained by the defendant and its predecessors in interest, except such repairs as were made by the municipality under 'certain resolutions adopted by the common council.'

"*Seventeenth.* That said dock and wharf from the time of its erection down to the commencement of this action was used by the owners of the abutting property, in connection with the adjacent premises, for the purpose of receiving freight from the vessels and delivering freight to vessels entering and leaving the port of Buffalo by Buffalo River. And that said abutting owners have at all said times used the said dock and wharf for the temporary storage of freight received from vessels, or freight awaiting shipment by lake and canal. That more than thirty years since, the owners of the property abutting said dock or wharf erected a shed over the same, extending from the buildings fronting thereon, practically to the exterior line of such wharf, for the purpose of protecting freight delivered from vessels, or placed upon such wharf for delivery to vessels, and that said shed was so maintained until about the year 1892, when the same was torn down; that said shed constituted no physical obstruction to the use of said dock and wharf by vehicles and pedestrians.

" *Eighteenth.* That said dock and wharf from the time of its erection down to the commencement of this action, and since, has been open to travel by vehicles and pedestrians, except when such travel was temporarily obstructed by freight stored upon said dock or wharf, and the said dock or wharf has been used during the said times by vehicles and pedestrians, more largely by the latter than the former; that the greater number of persons using said dock or wharf for foot or vehicle traffic did so for the purpose of reaching the stores and warehouses abutting on said wharf, and for the purpose of delivering supplies to the vessels lying thereat, or receiving passengers from such vessels, or transacting other business with said vessels. But it is equally true that many of the people using said dock and wharf, both for foot and vehicle traffic, used the same as a way of communication between Main street and points east of Washington street, and that many pedestrians constantly used said dock and wharf who had no business with the abutting stores and warehouses, or the vessels lying at said dock."

After finding the facts as thus stated the trial court found the following, which were designated as " conclusions of law : "

" *First :* That the filing of said ' Plan of New Amsterdam,' and the conveyances of the premises abutting on Front street by the Holland Land Company, was intended as and constituted a dedication of the premises in question known as Front street for the purposes of a public highway.

" *Second :* That subsequent to such dedication as aforesaid, the premises in question were accepted by the public as a public highway by the act of the Legislature of the State incorporating the Village of Buffalo, and the subsequent acts reviving and confirming such act of incorporation; and also by the action of the Commissioners of Highways of the Town of Buffalo in the year 1821 in causing the said street to be surveyed, described and entered of record, and by the action of the Trustees of the Village of Buffalo in the year 1826, in changing the name of said street.

"*Third:* That for a period of six years and more prior to the commencement of this action the said premises herein designated as 'Front street,' ceased to be traveled or used as a public highway, and ceased to be a highway for any purpose.

"*Fourth:* That the New York, Lackawanna and Western Railway Company, the defendant's lessor, is the owner of the premises herein designated as 'Front street,' and that the defendant as its lessor is entitled to the exclusive use, possession and occupancy of the same, free from any interference on the part of the plaintiff, its officers, agents, servants or employees, and that the plaintiff is not possessed of any right title or interest therein.

"*Fifth:* That the defendant is entitled to the judgment of this Court, dismissing the complaint upon the merits, with the costs of this action, and I direct the entry of judgment accordingly."

The judgment entered upon this decision was affirmed by the Appellate Division, one of the justices dissenting, and the plaintiff now appeals to this court.

*Louis E. Desbecker, Corporation Counsel (Samuel F. Moran* of counsel), for appellant. There was an express dedication of Front street between Main and Washington streets, as a public highway; and an express acceptance thereof by acts of the legislature and proceedings of the local authorities. (Dillon on Mun. Corp. [4th ed.] §§ 636–640 ; *Wyman* v. *Mayor,* 11 Wend. 486; *Flack* v. *Vil. Green Island,* 122 N. Y. 107; *Randolph* v. *Ackerman,* 58 App. Div. 596; *Requa* v. *Rochester,* 45 N. Y. 133 ; *Demopolis* v. *Webb,* 87 Ala. 659 ; *Webb* v. *Demopolis,* 95 Ala. 116 ; *Des Moines* v. *Hall,* 24 Iowa, 234; *Palmer* v. *City of Clinton,* 52 Ill. App. 67; *Matter of Hunter,* 163 N. Y. 542.) The dedication of the *locus in quo* carried with it the right in the public to use the same as a dock or wharf in addition to the ordinary street uses. (*Langdon* v. *Mayor, etc.,* 93 N. Y. 150 ; *Wetmore* v. *Gaslight Co.,* 42 N. Y. 384; *Gardiner* v. *Tisdale,* 2 Wis. 153, 188 ; *Barclay* v. *Howell's Lessee,* 6 Pet. 498 ;

*Collidge* v. *Learned*, 8 Pick. [Mass.] 503; *Haight* v. *Keokuk*, 4 Iowa, 199; *Barney* v. *Keokuk*, 94 U. S. 324; *Godfrey* v. *Alton*, 12 Ill. 29; *P. S. Co.* v. *U. P. S. Co.*, 109 U. S. 672; *Morris* v. *U. S.*, 174 U. S. 196). The cessation of travel over a highway for six years, upon which an abandonment may be predicated thereunder, must have resulted from the voluntary forbearance of the public to utilize the right to use the street, as contradistinguished from an involuntary surrender occasioned by the " exclusive possession" of a wrongdoer. (*Horey* v. *Vil. of Haverstraw*, 47 Hun, 356; *Freeholders* v. *Towns*, 20 N. Y. S. R. 394; *Burbank* v. *Fay*, 65 N. Y. 57; *Driggs* v. *Phillips*, 103 N. Y. 77; *Walker* v. *Caywood*, 31 N. Y. 51; *Mills* v. *Hall*, 9 Wend. 315.) There is no finding that the *locus in quo* has been abandoned by the public available to defendant to sustain the judgment. (*Redfield* v. *Redfield*, 110 N. Y. 671; Code Civ. Pro. § 1188; *Nickell* v. *Tracy*, 184 N. Y. 386; *Israel* v. *M. Ry. Co.*, 158 N. Y. 624; *City of Cohoes* v. *D. & H. C. Co.*, 134 N. Y. 397; *Bonnell* v. *Griswold*, 89 N. Y. 122; *Kelly* v. *Leggett*, 122 N. Y. 633.) The *locus in quo* having been dedicated to and accepted by the public, the presumption is that it continues to be a street, and the burden of establishing the contrary in this court and by a record containing unmistakable findings to that effect rests upon the defendant. (*Cohoes* v. *D. & H. C. Co.*, 134 N. Y. 397; *Beckwith* v. *Whalen*, 65 N. Y. 322; *Horey* v. *Haverstraw*, 124 N. Y. 273.)

*Louis L. Babcock* for respondent. The finding that for a period of six years and more prior to the commencement of this action the *locus in quo* ceased to be traveled or used as a public highway, and ceased to be a highway for any purpose, is a finding of fact and not a conclusion of law. (*Wright* v. *Loud*, 39 App. Div. 270; *Berger* v. *Varrelmann*, 127 N. Y. 281; 3 Nichols' Pr. 2618; 8 Ency. Pl. & Pr. 940; Baylies' N. T. & A. [2d ed.] 594; *Thomas* v. *Fuller*, 68 Hun, 361; *C. S. R. Co.* v. *Railroad Co.*, 149 N. Y. 51;

*Matter of Clarke,* 119 N. Y. 427; *Bennett* v. *Bates,* 94 N. Y. 368; *Redfield* v. *Redfield,* 110 N. Y. 673.) If Front street ever was a street or highway, it was not such when this action was begun or authorized, because it had then ceased to be traveled and used as such for a period of over six years. (*Horey* v. *Vil. of Haverstraw,* 124 N. Y. 273; *Beckwith* v. *Whalen,* 70 N. Y. 430; *City of Buffalo* v. *Hoffeld,* 6 Misc. Rep. 197; *Raynor* v. *Syracuse University,* 35 Misc. Rep. 83.)

Vann, J.   The trial court rendered judgment against the plaintiff on the theory that, although Front street became a public highway as early as 1826 through tender of dedication by the owners and acceptance by the municipal authorities, still it had ceased to be a public highway because it had not been traveled or used as such for a period of more than six years prior to the commencement of the action.   While facts were found which sustain the conclusion of law that Front street became a public highway through offer and acceptance, no finding of fact, classified as such, was made that the street had not been traveled or used as a public highway for the statutory period required to effect an abandonment. (*City of Cohoes* v. *Delaware & Hudson Canal Co.,* 134 N. Y. 397; *Matter of Hunter,* 163 N. Y. 542, 548; L. 1861, ch. 311; L. 1890, ch. 568, § 99.)

It is claimed that the third conclusion of law contains the finding of fact needed to support the judgment and that, although it is classified as a conclusion of law, since it is really a finding of fact the same effect should be given to it as if it had been so designated in the decision.

The finding in question is one of fact or law.   If it is the latter, the facts found do not support the judgment, because a street once in existence is presumed to continue until it ceases to be such owing to abandonment or some other lawful cause. (*Cohoes Case, supra.*)   We think, however, that the finding, except the last clause thereof, is not one of law but of fact.   The cessation of user and travel upon a street for the period prescribed involves a question of fact.   Traveling

upon a street is an act or a series of acts which can be seen and described. The use of a street for traveling purposes requires that something should be done thereon which is apparent to ordinary observation. One may travel on a street by walking, riding or driving. Each method involves action and an act is a fact, as that word is known to jurisprudence.

An error in the classification of findings by the trial court does not prevent an appellate court from classifying them for itself in accordance with their actual character. Giving a wrong name to a finding does not change its nature and if it is placed under the head of " conclusions of law," when it is a finding of fact, it will be treated on appeal as what it really is, at least for the purpose of upholding a judgment. (*Berger* v. *Varrelmann,* 127 N. Y. 281, 288 ; *Christopher & Tenth Street R. R. Co.* v. *Twenty-third Street R. R. Co.,* 149 N. Y. 51, 57.) As we have already seen, the judgment appealed from cannot stand unless the finding under consideration is a finding of fact, and it now remains to be seen whether it can stand even on that theory, since it is claimed that such finding of fact is inconsistent with other findings of fact, and hence must yield thereto at the election of the appellant in aid of his exceptions. It was upon this ground that one of the learned justices below based his dissent.

What is the situation according to the findings when properly classified ? About 1826 a public highway existed on the river front between Washington and Main streets. It still existed in 1838, when a dock was built by the abutting owners over and upon the land owned by them constituting said highway, covering it for its entire width and length. From that time to this the abutting owners have used the dock for dock purposes and the general public have used it for highway purposes, neither use excluding the other altogether, although doubtless interfering with it to some extent. Under these circumstances what became of the street when the dock was built ? Can abutting owners destroy a street in this way ? Did the construction of the dock annihilate the highway ? There is no statute which gives it that effect, and according to

the common law the street leaped from the ground to the dock and staid there.   It is there now unless it has been abandoned by nonuser as we read the authorities.   Thus, in an early case an owner of lands lying on East river was authorized by the legislature to construct wharves and bulkheads in front of his land.   There was a street known as Warren street extending through his land to the river and there " was a continuous public way upon as well as between the street and the river."   The abutting owner built a bulkhead in the river in front of his land, including that covered by the street and filled up the intervening space with earth " so as to transfer the shore of the river to the bulkhead, instead of remaining where it was at the time of opening Warren street."   The court held that the street, by operation of law, was extended from the former terminus over the newly made land to the water, and through its chief justice said : " The distance to which the shore was thus advanced into the stream of the river does not appear in the bill of exceptions, nor, in our view of the law of the case, is it material to be ascertained, for whether the distance was ten feet or ten hundred, we think this extension of the main land to the bulkhead carried with it a corresponding extension of the street, the bulkhead having now become for all purposes the shore of the river." After alluding to accretions of earth sometimes washed up on the shore of navigable waters, the learned chief justice continued : " It is entirely settled that these alluvial additions become the property of the owner of the land against which the deposit is made ; and it would hardly admit of a question that in such a case a public street leading to navigable waters would keep even pace with the extension of the land, so as to preserve an unbroken union between the easement on land and that on such navigable waters.   And if this consequence would follow from a change in the land by the action of natural causes, we think it must also be held to follow from one made by the immediate and voluntary act of the owner of the land on the shore in its original condition.   *   *   *   We hold that the filling up by Johnson of the river in front of

Warren street carried with it a necessary and legal extension of the street over the new made land and to the shore of the river at the bulkhead." (*People* v. *Lambier*, 5 Denio, 9.) (See, also, *Radway* v. *Briggs*, 37 N. Y. 256, 257; *Taylor* v. *Atlantic Mutual Ins. Co.*, 37 N. Y. 275, 282–3; *Matter of N. Y. C. & H. R. R. R. Co.*, 77 N. Y. 248; *City of Brooklyn* v. *N. Y. Ferry Co.*, 23 Hun, 277; 87 N. Y. 204; *Fowler* v. *Mott*, 19 Barb. 204; Elliott on Roads & Streets [2d ed.], § 5; Gould on Waters [3d ed.], § 103.)

If the abutting owner by erecting a dock cannot sever the connection between the street and the river front, can he blot out the street altogether by extending the dock over it? "Once a highway always a highway," until it ceases to be such by the action of the general public in no longer traveling upon it, or by action of the public authorities in formally closing it. (*City of Cohoes* v. *Delaware & Hudson Canal Co.*, 134 N. Y. 397, 406; *Driggs* v. *Phillips*, 103 N. Y. 77, 83; *Beckwith* v. *Whalen*, 65 N. Y. 322, 332; Elliott on Roads & Streets [2d ed.], § 877.)

When a private dock is built over a public street upon the shore of navigable waters, the dock becomes part of the street and the public has a right to travel over it. Ownership of the dock is not inconsistent with the existence of the street any more than ownership of the land over which the street extended. Assuming that the defendant or its predecessors could lawfully build a dock over their own land in order to reach the river, still, as their land was subject to the right of the public to travel upon it, they could not unreasonably interfere with that right nor with the existence of the street, which was the foundation thereof. Two rights co-existed. The defendant, as owner of the river front, had the right to reach the water. As there was a street along the river front over the defendant's land the public had the right to use the street. The building of the dock changed neither right. Both continued to exist, although under changed conditions. They met but did not merge, nor did either destroy the other. The defendant had the right to use its dock, as a

private dock, subject to the right of the public to travel over it, as they had previously traveled upon the land over which it was built.    The city had no right to use the dock for dock purposes, but its citizens had the right to use it for street purposes.    While the street followed the dock, and covered the whole of it, that did not authorize the city to collect wharfage; and although the dock was private property the same as the land beneath it, that did not authorize the defendant to prevent the public from using it for the same purpose that they had previously used the land.    The easement for travel still existed, but it was over the dock which took the place of the land constituting the street.    The public had the right to travel in the same place and in the same direction that they had before, but instead of traveling upon the surface of the land, they were obliged to travel and had the right to travel upon the structure that the defendant had placed on the land.    That structure became a street for the purpose of travel and a private dock for use as such, with a superior right in the public in case of conflict through reasonable use of the respective rights.

The right of an upland owner to build a dock over a street, the fee of which is in himself, out to navigable water, does not involve the right to appropriate the street or to make an unreasonable use thereof.    The owner of land can neither create nor destroy a highway over it, without the co-operation of the public.    He may lay out a proposed street on his land, grade it and offer it to the public for use, but it does not become a public highway until it is accepted as such.    At any time before acceptance he can withdraw his tender of dedication, but after acceptance his control ceases, except that he may still use his land for such purposes as do not interfere with its free use for all street purposes.    When accepted it becomes, *ipso facto*, subject to the easement of a street over it for all proper street uses until the public yields up its right in some manner provided by law.    The owner cannot destroy a highway over his land by any action whatever taken by himself alone.    If he obstructs it, the public authorities can compel

7

him to remove the obstruction and punish him for creating it. (Penal Code, § 385; Highway Law, § 104.) The erection of a dock is no exception to the rule. If the dock prevents public travel, it can be removed. If it does not obstruct travel, it becomes part of the street, and may be used by the public for all legitimate street purposes.

We have thus laid down the law applicable to the facts as found, independent of the fact appearing in the third conclusion of law. It is clear that the latter, treated as a finding of fact that Front street had not been traveled or used as a public highway for more than six years, is inconsistent with the eighteenth finding of fact that the public used the dock continuously from the time it was built, both for foot and vehicle traffic, as a way of communication between Main street and points east of Washington street. The learned trial justice evidently regarded the street as no longer in existence after the dock was built, and hence found that travel had ceased upon the street, although he found that it continued upon the dock which took the place of the street. He may thus have been misled into making the inconsistent findings.

"While an appellate court should harmonize inconsistent findings when it is possible to do so, if they prove irreconcilable it is the duty of the court to accept those most favorable to the appellant, as he is entitled to rely upon them in aid of his exceptions." (*Israel* v. *Manhattan Ry. Co.*, 158 N. Y. 624, 631; *Nickell* v. *Tracy*, 184 N. Y. 386, 390.) The finding that the street has been abandoned cannot be reconciled, according to our view of the law, with the finding that the dock has been used and traveled upon continuously as a street. We are, therefore, compelled to reject the former and to accept the latter, with the same force and effect as if it was the only finding upon the subject appearing in the decision. This leaves the conclusion of law that the defendant is entitled to the exclusive use, possession and occupancy of Front street, and that the plaintiff is not possessed of any right, title or interest therein, without any finding to support it. The exception to this conclusion of law, as well as to the

direction for judgment against the plaintiff, raised reversible error and requires us to reverse the judgment appealed from and to order a new trial, with costs to abide the event.

CULLEN, Ch. J., GRAY, O'BRIEN, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment reversed, etc.