## VILLAGE OF WELLSVILLE v. HALLOCK.

(Supreme Court, Equity Term, Allegany County. January, 1913.)

1. HIGHWAYS (§ 17*)—ESTABLISHMENT BY USER—RECORD OF USER.
    Where there was evidence to show such user by the public as would have justified a record of the road as a highway by the public authorities, their failure to enter such record did not change the statutory mandate that the road should be a public highway.
    [Ed. Note.—For other cases, see Highways, Cent. Dig. § 24; Dec. Dig. § 17.*]

2. MUNICIPAL CORPORATIONS (§ 697*)—STREETS—OBSTRUCTION—INJUNCTION.
    A court of equity had jurisdiction of a cause of action by a municipality to restrain the obstruction of streets, although the statute provided that highway commissioners could maintain such action.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1502–1505; Dec. Dig. § 697.*]

3. HIGHWAYS (§ 6*)—ESTABLISHMENT BY USER—DURATION AND CONTINUANCE OF USE.
    A road through defendant's premises had been used since 1866 by all wishing to do so, and soon afterwards it was worked by the pathmaster of the road district, and since about 1886 was used by the public as a highway, and a wooden bridge was built over a creek to accommodate public travel, with the consent of the owner and without interference until 1895, when he fenced the road and posted notices thereon forbidding its use as a public highway. *Held*, under Highway Law (Consol. Laws 1909, c. 25) § 209, providing that land used by the public as a highway for 20 years or more shall become a public highway, that by public user for the statutory period the road had become a public highway.
    [Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 8, 9; Dec. Dig. § 6.*]

---

4. HIGHWAYS (§ 7*)—PERMISSION BY USER—ADVERSE CHARACTER OF USE—
MANDAMUS BY PUBLIC AUTHORITIES.

Permitted use of land as a public highway for 20 years, and the work-
ing or maintaining of the same by public authorities, creates a highway;
but without adverse user, or if it is not taken charge of and repaired
by public authorities, a mere public use for 20 years, with the consent
of the owner, will not make it a highway.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 10, 12–14, 16,
18; Dec. Dig. § 7.*]

5. DEDICATION (§ 38*)—CONSENT—ACCEPTANCE—REVOCATION.

Where the owner of land, over which a roadway had been used since
1866, in 1902 consented to the use of a part thereof as a highway, to be
constructed three rods in width to connect with an iron bridge erected
by a village, and moved his fence to the boundary of the highway, he
could not, after alterations by the village on the faith of his oral con-
sent, revoke it, and allege that there was no highway over that part of his
premises.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 77, 78; Dec.
Dig. § 38.*]

6. DEDICATION (§ 16*)—ACTS CONSTITUTING—HIGHWAY.

Where the owner of land, over which a roadway had been long used,
in 1902 consented to the use of a part of it as a highway, over which
village authorities constructed a roadway three rods in width to connect
with an iron bridge erected by the village, and the owner moved his fence
to such boundary, and afterwards took a deed of the premises in which
the grantor reserved all street rights of way, such acts constituted a
dedication of the highway to the public.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 15–49; Dec.
Dig. § 16.*

For other definitions, see Words and Phrases, vol. 2, pp. 1908–1918;
vol. 8, pp. 7629, 7630.]

7. DEDICATION (§ 35*)—ACTS CONSTITUTING ACCEPTANCE.

Such acts on the part of the authorities constituted an acceptance of
the road as a legal highway.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 68–71, 75, 76;
Dec. Dig. § 35.*]

Action by the Village of Wellsville to restrain Charles M. Hal-
lock from obstructing a highway. Permanent injunction to issue.

Francis O'Connor and James T. Ward, both of Wellsville, for
plaintiff.

George H. Blackman, of Wellsville, for defendant.

BROWN, J. The issues and testimony present the question as
to whether there is a highway running from the northwest corner
of defendant's premises at East State street down a dugway road,
crossing the lot line between lot 3 and lot 31, and thence east of de-
fendant's mill building to Dyke's creek, crossing the creek and
leading southerly to Broad and Dyke streets, in the village of
Wellsville. That portion of the alleged highway from the north
bank of Dyke's creek to East State street runs wholly through the
premises of the defendant. At many times during the past three
years the defendant has closed the roadway by erecting fences and
barriers across the same, claiming that the roadway was not a

highway and that it was his private property. The street commissioner of the plaintiff, on removing such fences, has been sued by the defendant for such alleged trespass, and many of such actions are pending undetermined. In 1911 the plaintiff brought this action to restrain defendant from fencing up and obstructing the roadway, alleging that it is a highway; the defendant contending that it is not a highway, and asserting that its existence as a highway must be evidenced by a formal record by the village authorities before jurisdiction can be acquired by a court of equity to determine the questions involved.

[1] In Lewis v. N. Y., L. E. & W. R. R., 123 N. Y. 496, 26 N. E. 357, it was decided that, if the evidence tends to show such a user by the public as would have justified a record of the road as a highway by the public authorities, their failure to perform their duties does not change the mandate of the statute that the road should be deemed a public highway.

[2] In Village of Haverstraw v. Eckerson, 192 N. Y. 58, 84 N. E. 578, 20 L. R. A. (N. S.) 287, it was held that a court of equity had jurisdiction of a cause of action in behalf of a municipality to restrain the incumbering of streets, although the statute did provide that highway commissioners could maintain such action.

[3] Much testimony has been taken upon the subject of dedication, use, and acceptance of the road as a highway. The proof is that since the year 1866 there has been a dugway road leading from the northwest corner of defendant's premises at East State street and descending to the east to a point a few rods east of the line between lots 3 and 31, which has been at all times coincident with the existing roadway, and is entirely within the lines of the alleged highway, as described in the complaint. This dugway road, in connection with its extensions to the south, has been used by the public in passing through defendant's premises from East State street to Dyke street for more than 40 years. One of the defendant's grantors, who from 1872 to 1895 was in possession of the premises through which it runs, testified that: It was used by any one that wanted to use it. It was worked under the direction of the pathmaster of the road district 40 years ago. It has been worked and cared for by the Street Commissioner of the plaintiff since 1886. For more than 20 years before defendant went into possession of the premises, it was used by the public as a highway. There is no evidence that its use as a public highway was ever sought to be restricted or interfered with until the defendant purchased the premises in 1895, and at that time it had become a highway by use under provisions of the statute, which then provided that all lands which shall have been used by the public as a highway for a period of 20 years or more shall be a highway. It had become a highway by use, under all the authorities, by the consent of the owners of the fee, the use by the public, and the working and maintenance by the authorities of the town, and, later, of the village, when it was taken within the limits of plaintiff's corporation.

While there is much testimony tending to prove that for a short period in 1895, at the time the defendant went into possession of the premises, and for a while in 1899, this dugway road was fenced across at its western end, and that one or more signs forbidding its use as a public highway were posted along the same, such obstruction and posting of signs could have no effect in changing the roadway from a highway to a private road. City of Buffalo v. D., L. & W. R. R., 190 N. Y. 96, 82 N. E. 513, 16 L. R. A. (N. S.) 506. The proof is that from 1895 to 1909 this dugway road was used by the public as a highway, repaired, worked, and maintained by the public authorities, and while it may be true that the defendant did keep a sign posted somewhere along such dugway road, upon which was written the words, "Private Way, No Trespassing," and has fenced up said road at various times since 1895, no such signs or fences were upon or along such dugway road prior to 1895. The defendant's grantor, who was in possession of said premises from 1872 to 1895, testified that he never placed, authorized another to place, or saw any obstructions, or signs on or along the dugway road prior to the past three or four years. This dugway road has been used as a part of a public thoroughfare from East State street to Dyke street since at least 1866. The crossing of this thoroughfare over Dyke's creek has been by means of a bridge; Dyke's creek being considerable of a stream, and in times of high water has taken away the bridge at least four times in the past 30 years. In 1889 the then wooden bridge was destroyed by a flood, and it was replaced by a wooden bridge built by the town of Wellsville. Later the bridge was again destroyed by flood, and replaced by a wooden bridge by the town of Wellsville. In 1902 the bridge was again destroyed by flood, and the present iron bridge, about 100 feet long, was erected by the town of Wellsville.

At the time one of the wooden bridges was erected the north end was moved to the east some 50 or more feet; the roadway at the north bank of the creek being changed to accommodate the new location. In 1874, upon the petition of the then owner of the premises through which the dugway road passes, a highway known as the "Miller and Tremain road" was laid out and properly recorded from the Erie Railroad tracks north, crossing Dyke's creek at the location of the bridge as it then stood, running northwesterly, west of the mill building of defendant, to the lot line between lots 3 and 31, and thence northerly along the east side of the lot line to State street, crossing the easterly end of the dugway road. This Miller and Tremain road was opened, worked, and maintained by the town of Wellsville, and later by the plaintiff, from its southerly end to the dugway road, and in connection with the dugway road was used by the public as a highway from 1874 to 1902. The fact that the Miller and Tremain road was laid out upon defendant's grantor's petition, was opened and worked only up to the intersection with the dugway road by the plaintiff, and that the dugway road has been used as a means of getting from the Miller and Tremain road to State street ever since that date (1874), is very sig-

nificant in determining the question as to whether it was not orig-
inally intended by defendant's grantor that the dugway road was
and should be a public highway.

The northerly end of the Miller and Tremain road, from its inter-
section with the dugway road northerly to State street, has never
been opened and worked. This end is 75 feet long, with a rise of
more than 30 feet up a steep bank, and is impracticable for use as
a highway without great expense. In 1902 the location of the Mil-
ler and Tremain road was changed to the east of defendant's mill
building, forming a part of a continuous highway from the north
bank of Dyke's creek to East State street by way of the dugway
road, and has been used as such ever since, except as it was ob-
structed by defendant's fences erected within the past few years.
The only possible purpose or object in maintaining a bridge over
Dyke's creek by the town of Wellsville was to accommodate the
public highway travel from Dyke street to East State street
through the premises now owned by defendant. The only exist-
ing, practical, or feasible outlet for such traffic to the north was
over the dugway road. The fact that the town erected and main-
tained the bridges, and that the plaintiff worked and maintained
the roadway throughout its entire length from Dyke's creek to
East State street, over and including the dugway road, from 1866
to the present time, and that it has been used by the public as a
highway ever since that time, excepting possibly a short time in
1895 and in 1899, and for the past two or more years, makes it per-
fectly clear that the owners of the fee and those in possession of
the premises occupied by the dugway road permitted it to be used
as a public highway for more than 20 consecutive years prior to
1895, and within the terms of section 209 of the Highway Law
(Consol. Laws 1909, c. 25) it is a public highway. This statute
reads:

"All lands which shall have been used by the public as a highway for the
period of twenty years or more shall be a highway with the same force and
effect as if it had been duly laid out and recorded as a highway."

Judge Earl, in Speir v. Town of New Utrecht, 121 N. Y. 429, 24
N. E. 694, in speaking of this statute, says:

"The full scope and meaning of the words 'used as a public highway' are
not quite certain. The user need not be adverse and under such circum-
stances as would be required to give an individual a right of way by prescrip-
tion. If such had been the intention, other language would we think have been
used. All we have here is that 'the road was used by the public generally.'
But the mere fact that a portion of the public travel over a road for 20 years
cannot make it a highway; and the burden of making highways and sustain-
ing bridges cannot be imposed upon the public in that way. There must be
more. The user must be like that of highways generally. The road must not
only be traveled upon, but it must be kept in repair or taken in charge and
adopted by the public authorities. We think all this is implied in the words,
'used as public highways.' Although the owner of land may not dedicate it
for a public highway, and may not intend or assent that it shall become such,
yet if he permits it to be used in the way just indicated for 20 years, it would
be deemed a public highway, and he will not be permitted to question the
public right."

It is said that, notwithstanding this decision, there can be no creation of a highway by user, unless the use is adverse and hostile to the owner of the fee; that if he consents to such use there can be no adverse use, and hence no presumption of a grant by the lapse' of 20 years. In support of such contention City of Cohoes v. D. H. & C. Co., 134 N. Y. 397, 31 N. E. 887, is cited, wherein Judge Vann said:

"Public highways may be created * * * by prescription, or where land is used by the public for a highway for 20 years, with the knowledge, but without the consent, of the owner. The presumption of a grant of the right of way springs from the mere lapse of said period of time in connection with the adverse user by the public."

It is urged under this decision that to create a highway by user the public must have used the road for 20 years with the knowledge and without the consent of the owner; that the use for the period must be against the consent of the owner, hostile to the owner's rights; that the plaintiff must prove as a part of its affirmative case that the use for 20 years was in opposition to and in spite of the owner's protest.

[4] While it would appear that the statement of Judge Earl, that the use for 20 years need not be adverse to the owner of the fee, is contradictory to and in conflict with the statement of Judge Vann, that the use must be with the knowledge, but without the consent, of the owner, yet they are perfectly consistent and reconcilable upon a brief examination of the statements. Judge Earl says that when the owner permits lands to be used in the way just indicated—that is, by the public traveling and the keeping in repair or taking in charge and adopting by the public authorities—in such a case no *adverse* use is necessary to create a presumption of a grant through lapse of time. Judge Vann is entirely silent as to the keeping in repair or taking in charge and adopting by the public authorities. In such a case adverse use is necessary to create a presumption of grant through lapse of time. The law undoubtedly is that permitted use of land as a public highway for 20 years and the working and maintaining of it by the public authorities create a highway; that if it is not kept in repair or taken in charge and adopted by the public authorities, the mere use by the public as a highway with the consent of the owner will not make it a highway. Where the only claim that the land is a highway is based upon the mere travel for 20 years, the land will not become a highway, unless it be shown that such use was against the consent and hostile to the rights of the owner. It is believed that all conflicting authorities can be harmonized upon the lines above stated. Speir v. Town of New Utrecht, 49 Hun, 294, 2 N. Y. Supp. 426; Building of Bridge, etc., 100 N. Y. 642, 3 N. E. 679; Devenpeck v. Lambert, 44 Barb. 596; Hamilton v. Owego, 42 App. Div. 312, 59 N. Y. Supp. 103; Palmer v. Palmer, 150 N. Y. 148, 44 N. E. 966, 55 Am. St. Rep. 653.

Whatever was said upon the trial relative to this dugway road being a private road, as distinguished from a public highway, was in mere characterization of it, and inconsistent with the actual use to which it has been put for nearly 50 years.

[5] In 1902 at the time the town of Wellsville was erecting the present iron bridge over Dyke's creek to the south of defendant's mill

it was suggested by the plaintiff's street commissioner that the location of the highway that from about the year 1866 had run northerly from the north bank of the Dyke's creek to the west of the defendant's mill building and northerly along the lot.line between lots 3 and 31 to the dugway road, be moved to the east about seven rods to its present location. This suggestion or proposition was made to the defendant in person, and as to the defendant's consenting thereto he testifies:

"Q. Did you forbid them from moving that road from the west side to the east side of the mill? A. No; I agreed to it. Q. That was not entirely satisfactory to you? A. It was not entirely satisfactory, but I agreed to it. Q. You agreed to it? A. Yes, to give them a highway three rods wide."

It thus appears that the defendant fully consented in 1902 to the use for highway purposes of the lands owned by him now occupied as a highway from the north bank of the Dyke's creek on the east of his mill northerly to the eastern extremity of the dugway road, and that the defendant specified in 1902 that the highway to be constructed could be three rods in width. Immediately following such consent the plaintiff entered upon said three-rod strip. The town of Wellsville constructed an iron bridge from its southerly terminus across Dyke's creek. The plaintiff laid out on the ground, and worked, a roadway suitable for public travel its entire length, connecting its northerly end with the dugway road, and has ever since maintained the same as one of the public streets or highways in the village. The defendant, after giving such consent, moved his fence from its former location to the western side of the three-rod strip, and it has been maintained by him on the western boundary of the highway from about the northeast corner of his mill building to the dugway road; such fence being three rods from the eastern boundary of the defendant's premises. Since 1902 the roadway to the west of defendant's mill has not been used by the public, and the same has been abandoned by the plaintiff, although no formal steps have been taken to discontinue the same as a legal highway.

It is thus seen that the plaintiff's right to maintain a highway from the north bank of Dyke's creek east of defendant's mill as it now exists depends solely upon the oral consent of the defendant in 1902, before the change was made, that the location of the highway be changed from its original place west of the mill to its present location, and the events occurring since that consent was given. In People v. Goodwin, 5 N. Y. 568, the owner of the land verbally consented that the commissioners should lay out the highway, and it was held that, if the commissioners had acted on the faith of that consent by laying out the highway, the owner of the land would have been estopped from denying the legality of the act. In People v. Van Alstyne, *42 N. Y. 38, the owners of the land verbally promised, if the highway was laid out, to claim no compensation for their lands. They subsequently revoked such promise. It was held that, if the commissioners had acted upon their parol consent before it was withdrawn, their claims to compensation would have been barred. In Marble v. Whitney, 28 N. Y. 297, it was held that, while the verbal consent to the alteration is

revocable, it must be revoked before the road is changed. A revocation of the consent subsequent to the alteration of the highway cannot be permitted. The consent is not a license that he can revoke after the alteration is made. If the alteration is made immediately on the faith of the virtual consent, the consent is irrevocable. On principle, the defendant ought not to be permitted to now revoke such consent, and allege that there is no highway on the easterly side of his premises east of his mill building.

[6, 7] The fact is that the town of Wellsville, since such consent was given, has rebuilt the iron bridge and maintained it as a highway bridge ever since. The plaintiff, immediately after such consent, laid out on the ground a highway, worked and made a roadway, and ever since has maintained within the lines described in the complaint a public highway. In 1909 the defendant, in pursuance of the terms of a contract to purchase, took title by deed of all the lands occupied by him on lot 31, in which deed his grantor reserved "all street rights of way laid out and passing through said premises." The lands described in the complaint between Dyke's creek and the dugway road were then occupied as a highway. It was one of the street rights of way that passed through the premises. The right to occupy the land as a street had been consented to by the defendant 7 years before. It is quite clear that defendant's title is incumbered by an easement expressly created in his deed. Whatever title he possesses is subject to the right of the public to pass and repass over the lands described in the complaint. Within the authorities and upon principle it must be held that so much of the land described in the complaint as has not been used by the public as a highway for the period of 20 years has by the consent and offer of a highway three rods wide of the defendant, the acts of the authorities of the plaintiff, and the conveyance to the defendant become dedicated to the public and accepted by the proper authorities as a legal highway, and was such at the time that the defendant erected the obstructions, built the fences, and placed the barriers across the same.

It therefore follows that the lands described in the complaint from the southerly terminus to the turn to the west near the foot of the dugway for the width of 3 rods constitute a legal highway; that the lands described in the complaint from the turn above mentioned up the dugway to East State street for the width of the actual use, about 17 feet, constitute a legal highway. The plaintiff is entitled to a permanent injunction restraining the defendant from obstructing the same, together with costs.

Let findings be prepared.